Robinson, Appellee and Cross-Appellant, *v.* Gatti, Appellant and Cross-Appellee.*

(No. 719—Decided May 20, 1961.)

*Motion to certify the record overruled, November 8, 1961. Appeal dismissed, 172 Ohio St., 477.

Mr. *Tom Reed*, for appellee and cross-appellant.

Messrs. *Miller, Searl & Fitch*, for appellant and cross-appellee.

Brown, J. For the purpose of this opinion, plaintiff, appellee and cross-appellant herein, Harold E. Robinson, will be referred to as plaintiff, and defendant, appellant and cross-appellee herein, Frank E. Gatti, M. D., will be referred to as the defendant.

This is an appeal by the defendant from the denial by the Common Pleas Court of Scioto County of a motion for judgment notwithstanding the findings and judgment of that court and a cross-appeal by the plaintiff from the further denial by the same court of a motion for a new trial in the same proceedings.

Plaintiff filed a petition on September 16, 1958, and subsequently an amended petition against defendant, a physician and surgeon licensed to practice in Ohio, to recover damages for alleged malpractice in treating and failing to discover and treat injuries of plaintiff sustained in an automobile accident. He alleged the injuries resulting from the collision, defendant's diagnosis and treatment, the subsequent discovery of more serious injuries, his admission to a hospital, the development of infection in his lung, special damages and permanent disability, praying for the recovery of $167,000.

To the amended petition, defendant filed an answer admitting his professional status and that the plaintiff came to the emergency room of the Portsmouth General Hospital and was treated by the defendant, and he further denied all other allegations.

The matter was tried to the court on December 30, 1960, a jury having been waived, and resulted, on January 16, 1961, in a judgment entry finding for the plaintiff and against the defendant in the sum of $800 and costs, for the reasons set forth in the filed opinion.

The evidence discloses that on the afternoon of July 4, 1958, plaintiff received certain injuries when his truck overturned and that, thereafter, he was taken by automobile to the Portsmouth General Hospital about 4:00 p. m. where he either walked or was wheeled in a chair to the emergency room.

A nurse took his blood pressure and made some preliminary examination; the defendant was called to the emergency room and examined the plaintiff; plaintiff was in pain and had bruises and abrasions over his body; and plaintiff's wife testified that plaintiff was then short of breath, coughing and spitting blood, but defendant denied noticing these symptoms. There was a conflict of testimony as to the extent of the examination made by the defendant, but it is admitted that he talked with plaintiff or his wife and that he observed plaintiff walk a short distance. Defendant testified he examined plaintiff's chest with a stethoscope and his chest and extremities with his hand and found scratches and abrasions but no internal injuries and that he told plaintiff's wife to take him home and bathe him. No X-rays were taken and no medication given. The defendant gave his professional card to plaintiff or his wife, which had on it his name, telephone number and address and on the back of which defendant had written "Phone my home if need me." Plaintiff claims no stethoscope was used and that the examination was cursory. Some discussion was had between the parties concerning plaintiff's lack of any type of hospitalization. Following this examination, plaintiff was taken home. He later paid the defendant ten dollars for services rendered in the emergency room.

During that night, plaintiff's condition became worse, and on the afternoon of July 5, 1958, plaintiff consulted another doctor, a Dr. Jones of Stockdale, Ohio, who examined him and diagnosed his condition as external abrasions and, finding no internal injuries, gave him a combination pain killer, sedative and relaxant and sent him home to rest. Later that evening, plaintiff went to the Smith-Everett Hospital in Portsmouth where he was examined by Dr. Everett. He complained of pain, of shortness of breath and of spitting up blood. Upon examination, he was found to have a broken rib and a punctured lung. Dr. Everett admitted him to the hospital, taped his chest to relieve the pain, put him on medicine and antibiotics and ordered an X-ray of his chest. Twelve days later, on July 17, 1958, while he was under Dr. Everett's care, an infection was found in plaintiff's lung. Plaintiff was hospitalized and treated for about five weeks.

The defendant sets forth three assignments of error, but,

as we view the record, the sole question to be determined is whether the evidence is sufficient to establish the fact that the plaintiff is entitled to a judgment as a matter of law.

To maintain his action, plaintiff was required to prove not only negligence or unskillfulness on the part of the defendant in not discovering and treating a broken rib and punctured lung but also that the act or acts of malpractice were the proximate cause of injury or damage to the plaintiff. Assuming, without deciding what the trial court found to be true, that the defendant failed to use that degree of skill and diligence and treatment a physician of ordinary skill and diligence practicing in such community would have used under similar circumstances, was there sufficient evidence that such omission either proximately caused or contributed to cause plaintiff additional suffering? We think not.

There was unanimity of medical testimony on both sides that the automobile accident was the proximate cause of almost all, if not all, the injuries suffered by plaintiff. Even Dr. Everett, the only medical witness called by plaintiff, testified as follows:

"Q. Now, the condition of the plaintiff here as you described it when you first saw him on July 5, 1958, can you tell the court, Doctor, in your opinion what caused that condition? A. His auto accident.

"Q. Is there any causal relationship to a reasonable degree of medical certainty in Dr. Gatti's failure to diagnose the fractured rib or to administer treatment this first day and this man's condition as you found it? Is there any causal relationship? A. It is difficult to say.

"Q. In your opinion what would be the primary cause? A. The primary cause was his automobile accident.

"Q. You are not able to express an opinion as to whether or not there was any causal relationship between Dr. Gatti's action or nonaction and this man's condition? A. Not having seen the man at the time it is hard to say."

The only testimony in the entire record, which could possibly sustain the court's finding of a cause or connection between the defendant's failure of July 4 to diagnose the plaintiff's condition and prescribe other treatment, i. e., strapping, antibiotics and hospitalization, and any additional pain and

suffering by the plaintiff is contained in the following questions by the court to Dr. Everett after the latter had testified that the quicker antibiotics are administered the less chance there is of infection:

"Q. I have a question I would like to ask you. I believe you testified a moment ago that there was some evidence around the 17th of July that the man had some infection in his chest cavity. A. That's right.

"Q. In your opinion did this infection increase his stay in the hospital to any degree? A. Yes, it did.

"Q. Do you have an opinion as to what degree? A. I would say it added a couple of weeks to his stay.

"Q. Do you have an opinion as to whether or not the one day's delay in admission to a hospital had anything to do with the length of time of his stay in the hospital? A. That is difficult to say.

"Q. You have no opinion on that? A. No, I haven't."

It was apparently from this testimony that the court made its award as to the effect of the twenty-four hour delay in treatment and diagnosis. All other medical testimony (three doctors and the defendant who is a doctor) was to the effect that such delay contributed in no way to any additional suffering. In its opinion the court said:

"The question remains as to how the plaintiff was damaged by the defendant's negligence, since he can only recover for damages proximately caused by the negligence of the defendant. The plaintiff in his petition prays for damages which, obviously, have no causal connection with diagnosis or lack of diagnosis and treatment by the defendant. The actual punctured lung and broken rib were caused by the wreck, not by the defendant. Plaintiff has failed to show by any evidence any permanent disability resulting from any act of the defendant. The question amounts to this. How was the plaintiff damaged because of a twenty-four hour delay in receiving proper diagnosis and care? Was his hospitalization lengthened? There is some evidence that early use of antibiotics might have controlled his infection and, therefore, lessened his hospital stay somewhat. He obviously suffered some additional pain and suffering and is, therefore, entitled to compensation in so far as possible for actual damages due to the defendant's negligence. Judgment

will be awarded against the defendant in the sum of eight hundred dollars ($800)."

It is recognized that in malpractice suits where an act of omission is involved proof is extremely difficult to establish legal causation sufficient to warrant a recovery. Here defendant examined the plaintiff on July 4th and another doctor saw him on July 5th and gave him a combination pain killer, relaxant, and sedative and like the defendant failed to discover the broken rib, punctured lung or administer antibiotics. Later in the evening, a third doctor, Dr. Everett made the correct diagnosis, taped the rib, administered antibiotics and hospitalized the plaintiff. Twelve days later, on July 17, an infection developed. This infection, if found and treated with antibiotics on July 4th, according to one witness, might possibly have controlled the infection and thus possibly lessened the pain and suffering and hospitalization already necessary because of the automobile accident. With all the other medical testimony to the contrary, such testimony standing alone is not sufficient to warrant a recovery. This is apparent in view of the general, conjectural and speculative aspects of its nature and the likelihood of numerous intervening causes of the infection upon the failure of early control of which, by defendant's nonuse of antibiotics, the increased pain and suffering and hospitalization was based.

The second paragraph of the syllabus of *Kuhn* v. *Banker*, 133 Ohio St., 304, states:

"Even though there is evidence of malpractice sufficient for submission to the jury on that issue, a verdict must be directed in favor of the defendant where there is no evidence adduced which would give rise to a reasonable inference that the defendant's act of malpractice was the direct and proximate cause of the injury to the plaintiff."

It is to be noted that the record discloses no evidence of any specific antibiotic to be administered for treatment of the type of injury involved in this case. All testimony relates to the general term "antibiotic" with no further scientific inquiry. By definition, an antibiotic is a substance of biologic or microbal origin that possesses antibacterial activity.

Collected Papers of the Mayo Clinic and Mayo Foundation, Vol. 44, 1952, W. B. Saunders Co., page 668.

On page 669 of that book, antibiotic agents listed in current use are: Bacitracin, Tyrothricin, Gramicidin, Polymyxin A and B, Penicillin, Streptomycin, Cloramphenicol, Aureomycin, Terramycin, Neomycin, and Viomycin. Between 1952 and July 4, 1958, the drug companies put other so-called "wonder drugs" on the market, whose properties even to the layman are known to accomplish miracles in treating certain human conditions and to be just as lethal in effect if used in treating other human conditions. Suffice it to say that antibiotics per se have not achieved the high standard of acceptance that aspirin has in the medical profession as a specific for general treatment.

Obviously, any decision based solely on opinion evidence of the possible results from the use of such a general class of treatment as "the use of antibiotics" should not be the basis on which to predicate a judgment and return damages to the plaintiff. Reasonable minds can only reach this conclusion.

In fact, in the medical testimony adduced there was a definite conflict of opinion among the doctors concerning even the wisdom of the "use of antibiotics" as a method of treating injuries of the type suffered by the defendant.

As was said in *Edwards* v. *Wiggins*, 65 Ohio Law Abs., 292 at page 300, "But if the length or extent of convalescence is known to be *possibly* due to the doctor failing to exercise ordinary prudence or to conform to good medical practice any associated pain or suffering cannot be regarded as the proximate result of such negligence.

"This essential distinction between the probability and possibility of proximate connection was recognized by our Supreme Court in *Kuhn* v. *Banker*, 133 Ohio St., 304."

Plaintiff filed his motion for new trial for the reason that he was surprised by the testimony of Dr. Everett which ordinary prudence could not have guarded against. At the trial, Dr. Everett was called by the plaintiff and testified as his witness. In support of his motion his attorney filed affidavits to the effect that in the preparation of the trial of the case Dr. Everett stated that the plaintiff was totally disabled, and since the trial Dr. Everett made a report to the state of Ohio, that the plaintiff was totally disabled, on an application for Aid to Dependent Children. Upon hearing, the motion was denied, from which denial plaintiff filed his cross-appeal on questions

of law assigning as error that the trial court erred in overruling plaintiff's motion for a new trial.

Section 2321.17 of the Revised Code provides, in part, that a final order, judgment or decree shall be vacated and a new trial granted by the trial court for any of the following causes materially affecting the aggrieved's substantial rights:

"(C) Accident or surprise which ordinary prudence could not have guarded against."

The granting or refusing of a motion for a new trial rests largely in the sound discretion of the trial court and the granting or denial of such a motion will not be disturbed on review, unless there has been a plain and clear abuse of judicial discretion. 40 Ohio Jurisprudence, 488, Section 6.

An examination of the bill of exceptions and the record discloses that, at no time throughout the course of the trial, either before, during or after the testimony of Dr. Everett who was called as his witness, did plaintiff indicate any surprise as to the nature, quality or substance of Dr. Everett's testimony. In fact, the first inkling of surprise appeared in the motion for a new trial. The plaintiff was content apparently to accept Dr. Everett's testimony, hope for a favorable decision, and not make known his alleged surprise to the trial court.

Paragraphs two and three of the syllabus of *Kroger, Admr.,* v. *Ryan,* 83 Ohio St., 299, read as follows:

"2. Where the ground for motion for new trial is surprise arising from the fact that the party's witness testified upon trial contrary to his expectation, the mover must show that he exercised proper diligence in the preparation of his case to prevent surprise, and also show that he used all means reasonably available to overcome the effect of the surprise. One of the means available is a motion addressed to the court for a continuance of the cause in order to afford the party opportunity to supply the evidence the failure to present which worked the surprise.

"3. Where, upon the hearing of such a motion, it appeared that the mover failed to observe diligence in the preparation of his case for trial by neglecting to ascertain what his witness really knew and could testify to, and also showed that the party did not at the time make known his surprise and ask for a continuance of the cause, but remained silent, letting the trial

proceed, thus taking his chance on a favorable verdict upon the evidence given, the motion was properly overruled.''

Accordingly, in view of the lack of diligence on the part of the plaintiff, we find no abuse of discretion by the trial court in overruling the motion for a new trial.

The judgment of the Common Pleas Court is reversed, the cross-appeal is dismissed and final judgment is rendered for the defendant.

*Judgment accordingly.*

COLLIER, J., concurs.