Lyle B. and Doris KAPPEL, Plaintiffs-Appellants,

v.

Robert A. SLICKMAN and Robert L. Newman, Defendants-Respondents.

No. 51530.

Supreme Court of Missouri,
Division No. 1.

March 14, 1966.

Rehearing Denied April 11, 1966.

Elwyn L. Cady, Jr., Kansas City, Robert G. Knapp, Mission, Kan., for appellants.

Larry L. McMullen, Caldwell, Blackwell, Sanders & Matheny, Curtis S. Barton, Kansas City, for respondents.

WELBORN, Commissioner.

Doris Kappel brought suit against Doctors Robert A. Slickman and Robert L. Newman for $30,000 damages for alleged injury

caused by negligence of defendants in furnishing medical and surgical care. Lyle B. Kappel, husband of Doris, sued for $10,000 for medical expenses for his wife and loss of consortium, arising out of the negligent acts charged by his wife. A jury returned a verdict in favor of both defendants. After their motion for new trial had been overruled, plaintiffs appealed.

Plaintiffs' cause of action was based upon the alleged negligent failure of defendants to administer antibiotic therapy for a postoperative infection. On July 20, 1961, defendant performed a hysterectomy on Doris Kappel at St. Mary's Hospital in Kansas City. Seven days later, when the dressing was changed on the abdominal incision for the operation, infection was noted in the incision area. According to Mrs. Kappel, she observed three abscesses in the incision. She stated that the only treatment which was administered was cleaning the infected area with an antiseptic and application of heat. She testified that the abscesses broke approximately two hours after the dressing was changed and "all this matter ran all over the bed and me and everything, but I continued that heat pad for a week in the hospital and it still drained. They kept a bandage on it, and then after another week, the first of August, they told me I could go home. I still had the bandages on it, it was still draining, * * *."

Mrs. Kappel was given dressings to apply to the incision after she left the hospital on August 1. She was having abdominal pain at that time. She stated that after she went home, her "stomach kept swelling and swelling and getting larger." She saw Doctor Newman about a week after her discharge from the hospital. He told her, "You are doing fine, you can go back to work next week."

However, upon her return from the visit to the doctor's office, Mrs. Kappel "kept getting worse and the pain was getting terrible, and it centered, too, up in my shoulder where I couldn't move * * *."

She stated that she telephoned Doctor Newman who told her to put the heat pad on her shoulder. In the next week, she became "real sick" and went to the doctor's office. Doctor Slickman sent her right to the hospital on August 24.

Mrs. Kappel stated that, at the time of her second admission, she had pain in the region of the incision. "[T]here was nothing except it looked like a hole down in my incision * * *." She also said that she was "very ill" while in the hospital and had "terrible pain." "It was hurting me every place." She testified that her condition improved on antibiotic treatment. She was discharged from the hospital on September 8.

Subsequently, Mrs. Kappel consulted other physicians for what she described as "dropping" and "protruding" of her stomach. In April, 1963, she was operated on by another surgeon for incisional hernia. At the time of trial, in November, 1964, she stated that her abdomen "is just all bulged out again and my stomach has fallen and my insides, I guess, are falling out." She planned to go to the hospital for further surgery.

Plaintiffs' contention that Mrs. Kappel should have been administered antibiotic therapy on her first admission is based upon excerpts from the deposition of Doctor Newman, read into evidence by plaintiffs as admissions against interest. Doctor Newman stated that he prescribed Achromycin(V), a broad spectrum antibiotic, for Mrs. Kappel "as a protection against the spread of infection"; that because of its broad spectrum capabilities, that drug should be able to combat whatever organism was involved; that, at that time, his best judgment was that an antibiotic drug should be administered and that Achromycin(V) was the drug which he chose.

Plaintiffs' proof of the allegation that the drug was, in fact, not administered to her, was based on Mrs. Kappel's testimony that, during her hospitalization, she received no medication in capsules, the

form in which Achromycin(V) was administered. Visitors who saw the patient while she was in the hospital, including her husband, testified that they observed no capsules given her.

Without getting into defendants' evidence to the effect that Achromycin(V) was, in fact, administered following the discovery of the infection, we are confronted by defendants' contention here that, regardless of plaintiffs' allegation of error on the trial, the judgment below must be affirmed because plaintiffs' evidence failed to make a submissible case against defendants. Their contention is based primarily upon the theory that proof of causation between the alleged omission of the defendants and Mrs. Kappel's complaints required expert medical testimony which plaintiffs did not present.

■ Causation is, of course, an element of a cause of action for malpractice. Plaintiff has the burden of proving that element, along with the other necessary elements of the action. Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600. However, such element need not be directly proved. The burden of proof in such regard may be sustained by circumstantial evidence. Steele v. Woods, Mo.Sup., 327 S.W.2d 187, 195 [5–8].

■ Other than the excerpts from Doctor Newman's deposition, read into evidence on behalf of plaintiffs, no medical testimony was offered by them. Looking solely at plaintiffs' evidence, causation would have to be based upon the doctor's testimony by deposition that a broad spectrum antibiotic was prescribed to prevent the spread of infection, plaintiffs' evidence that such treatment was not administered and Mrs. Kappel's testimony that pain in the region of the incision continued, which, together with pain in other areas, including her shoulder, caused such discomfort that she had to be rehospitalized twenty-four days after her first discharge. Plaintiffs' evidence is silent as to the diagnosis on her

second admission. Mrs. Kappel testified that, under antibiotic treatment, her condition improved. As for the external appearance of the wound at the time of the second hospitalization, we have only Mrs. Kappel's testimony that "it looked like a hole down in my incision." We have no doubt that this evidence was insufficient to permit the jury to infer that the second hospitalization was the result of the failure to receive antibiotic treatment on the first hospitalization.

Apparently plaintiffs' counsel recognized the necessity for further proof of causal connection between the alleged lack of antibiotic therapy and Mrs. Kappel's complaints following the first hospitalization. In the cross-examination of Doctor Newman, plaintiffs' counsel sought to elicit an admission that "there is a causal relationship between the lack of the antibiotic therapy and this final result of chronic wound infection and separation with resulting pain and drainage." Such was an offer of proof stated by counsel when objection was sustained to his question leading up to an inquiry to such effect. (The basis for the offer of proof does not appear. Doctor Newman, on direct examination, testified that the wound infection had nothing to do with the condition which necessitated Mrs. Kappel's rehospitalization.) Appellants make no objection here to the court's ruling in this regard, so that we are not called upon to answer the question of the extent to which plaintiff in a malpractice case may call upon the defendant physician for expert testimony in support of plaintiff's case. See Annotation: "Right to elicit expert testimony from adverse party called as witness." 88 A.L.R.2d 1186.

Absent favorable plaintiffs' evidence on the question of causation, we have examined defendants' evidence to determine whether it contains evidence favorable to plaintiffs, which, together with that of plaintiffs, and viewed in the light most favorable to plaintiffs, supplies the essential proof of causation. We find the following: Doctor Newman testified that in a severe wound in-

fection, "you get severe cellulitis on the abdominal wound * * *." From this an inference might be drawn that the prescription of Achromycin(V) to prevent the spread of infection was aimed at avoiding cellulitis. However, cellulitis did develop as shown by the diagnosis on Mrs. Kappel's second hospitalization of "pelvic cellulitis, postoperative." A second diagnosis on that hospitalization was "Peritonitis, subacute." A note, dated 8/28/61, in the hospital record of Mrs. Kappel's second hospitalization by an otherwise unidentified "J. Russell, M.D.," states: "In view of history of wound infection and Rt. (?) subdiaphragmatic infection following recent surgery, probably has flare up of infection in or around wound or smoldering subac. peritonitis." Doctor Newman's first note on the second hospitalization, dated 8/29/61, states a diagnosis of. pelvic cellulitis with low grade peritonitis. "It is unusual in my experience for pelvic postoperative infection to appear this late after surgery but apparently this is cause of pt's symptoms."

■■■ On the basis of this evidence, coupled with that of plaintiffs, may the jury reasonably infer causation? We think not because of the lack of essential proof that omission of the Achromycin(V) on the first hospitalization caused the continuance or recurrence of the infection which necessitated the second hospitalization. True, from Doctor Newman's testimony the inference may be drawn that his object in prescribing Achromycin(V) was to prevent cellulitis. However, there is no evidence from which the jury could find that the treatment would likely have produced such result. Certainly the propensities of Achromycin(V) are not such a matter of common knowledge that jurors of ordinary intelligence and experience would know the results reasonably to be anticipated from treatment with such drug. There can be no doubt that infections do exist which resist even broad spectrum antibiotic treatment. See Rogers v. United States, 6th Cir., 334 F.2d 931, 934. Likewise, although the hospital notes on the second hospitalization

refer to the previous wound infection, there is no way in which lay jurors, under the evidence here, could have concluded whether the condition which caused the second hospitalization was produced by the original wound infection or by conditions which developed for other causes in the 23-day interval between the two hospitalizations. Other than Mrs. Kappel's testimony that there was a "hole" in her incision, there is nothing to show any external symptoms at the time of the second hospitalization. From this, we can assume that excretion from the wound was not present at that time. At least, plaintiffs' evidence showed none. Lay jurors would hardly be qualified to assess the significance of a "hole" as it related to Mrs. Kappel's condition on her second hospitalization. Likewise, her symptoms were so broad that the jurors would be unable to relate such matters as the shoulder pain to the original infection.

The foregoing demonstrates, we believe, that the evidence here could have served only to cast the jurors into "a river of doubt," leaving only "conjecture and surmise in their effort to reach certain and sure ground." Pedigo v. Roseberry, supra.

Appellants have not filed a reply brief, so we do not have the benefit of their analysis of the evidence on this matter. They have submitted four cases which, they contend, bear on the issue. However, we find none of them helpful in support of a contention that the evidence here was sufficient to make a submissible case on the issue of causation. Aiken v. Clary, Mo. Sup., 396 S.W.2d 668, was concerned primarily with the question of the necessity for expert medical testimony in relation to the doctrine of informed consent. The only discussion of the issue of causation (396 S.W.2d 676 [10, 11]) affords no assistance to plaintiffs here. In Steele v. Woods, Mo. Sup., 327 S.W.2d 187, *medical* evidence showed that gangrene resulted from impaired circulation; the impaired circulation resulted from spasms; the spasms would probably have been relieved by the

blocking off of the involuntary nerves (the paravertebral block), and this was not done. The court concluded that this evidence "sufficiently established causal connection between the failure to give the block and the injury which plaintiff suffered." 327 S.W.2d 196 [9]. The court reasoned that "[w]here the logical conclusion from the evidence is that if certain things were properly done certain results would not have occurred, and they *did* occur, the question of causal connection is sufficient to go to the jury." 327 S.W.2d 195 [8]. Here, however, the conclusion that infection would not have occurred had antibiotics been administered is not a matter of logic or application of common knowledge.

■ In Morgan v. Rosenberg, Mo.App., 370 S.W.2d 685, the negligence charged was that the physician, after informing plaintiff that the removal of plaintiff's gall bladder was required, performed an operation for such purpose but negligently omitted to remove the gall bladder. A subsequent operation was required and the removal done. In discussing the sufficiency of evidence of causation, the court appears to have concluded that expert testimony of lack of due care based upon a hypothetical question which assumed similar pain before and after the first operation was a sufficient basis for a finding of causation. We do not take that case to hold that similarity of pain before and after alleged negligent medical treatment is necessarily sufficient to support a finding of causation.

The fourth case, Seewald v. Gentry, 220 Mo.App. 367, 286 S.W. 445, contains a discussion indicating that expert medical testimony is not necessary to support a finding of causation. However, there was such testimony in that case.

■ Without endeavoring to lay down a hard and fast rule as to the necessity of direct expert testimony on the issue of causation in a malpractice case (see Annotation: "Proximate cause in malpractice cases," 13 A.L.R.2d 11), we reach the conclusion that in this case the evidence was insufficient to show that the negligence charged was the cause of Mrs. Kappel's injury. In such circumstances, we need not consider the trial errors asserted by plaintiffs. Bello v. Stuever, Mo.Sup., 44 S.W.2d 619, 620 [2].

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.