Sandra L. PINKY, Plaintiff-Appellant,

v.

Dr. Michael WINER,
Defendant-Respondent.

No. 46131.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 5, 1984.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
July 12, 1984.

Application to Transfer Denied
Sept. 11, 1984.

Deeba, DeStefano, Sauter & Herd, St. Louis, for plaintiff-appellant.

Joseph M. Kortenhof, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

This cause of action arose from alleged medical malpractice. The trial court granted respondent's Motion for a Directed Verdict at the close of plaintiff's evidence. We reverse.

Appellant, Sandra L. Pinky, seriously injured her left hand while operating a multidrill and tap press. Appellant's left glove became drawn into the equipment she was operating. As a result, appellant's middle, ring and little fingers were crushed.

Following the accident, appellant was treated at Sutter Clinic where x-rays were taken of her left hand. Appellant then saw a Dr. Holtmann at Barnes Hospital. Dr. Holtmann placed appellant's fingers in splints and referred her to therapy. Subsequently, appellant went to see respondent, Dr. Michael Winer, an orthopedic surgeon.

Respondent's original diagnosis was a mallet finger deformity of the left fifth finger. In treatment for this injury, respondent discussed three alternatives. The first was to do nothing and accept the deformity. The second was to try treating the deformity by further splinting. The third alternative was surgical correction.

Appellant originally chose the second alternative, further splinting. However, substantial progress was not evident upon appellant's third visit to respondent's office. Thereupon, appellant decided upon surgical correction.

The surgery was performed at Missouri Baptist Hospital on September 7, 1978. Prior to her hospital admission, appellant was unaware of any circulatory problems which she may have had and respondent did not ask her if she had any circulatory problems. At the conclusion of the surgery, a dressing was applied. This dressing was reinforced with an aluminum splint.

Appellant's evidence showed that after the dressing was applied she told respondent the bandages were too tight. Appellant also testified that she complained to the nurses that the bandages felt tight and they were cutting off circulation.

Upon arriving home, appellant averred that the pain persisted. On September 9, 11 and 13, 1978, appellant called respondent's office requesting to speak to respondent about the pain. Donald Pinky, appellant's husband, and Helen Cummings, appellant's mother, corroborated appellant's testimony regarding appellant's telephone calls to respondent's office.

Appellant finally saw respondent on September 15, 1978, in his office. Upon removing the bandage, it became apparent to respondent that gangrene had set in and the little finger had become necrotic. Respondent concluded "something" had happened to the circulation of the finger. Subsequently that afternoon, appellant was readmitted into Missouri Baptist Hospital for amputation of her finger.

At trial, appellant read into evidence the hospital records regarding her admission from September 6 to September 9 and the second admission from September 15 through October 6 of 1978. Appellant offered the testimony of herself, her husband, her mother, respondent's deposition and respondent's office notes. She did not offer any expert testimony. At the close of appellant's evidence, the trial court granted respondent's motion for a directed verdict.

The granting of a directed verdict at the close of the plaintiffs' evidence is a drastic action which should be taken only when all the evidence and reasonable inferences therefrom are so strongly against the plaintiff that reasonable men could not differ. When the party having the burden of proof has adduced substantive evidence on a pleaded issue, that issue should be submitted to the jury and it is reversible error to direct a verdict against that party. In deciding whether the plaintiff in this case adduced substantial evidence which would require that her theory of Dr. Winer's negligence be submitted to the jury, it is our duty to view the evidence before the trial judge who directed the verdict against the plaintiff in a light most favorable to the plaintiff and indulge in all reasonable inferences from the evidence in her favor. *Kaelin v. Nuelle*, 537 S.W.2d 226 (Mo.App. 1976).

Appellant argues that the trial court erred in granting a directed verdict because she had made a submissible case based upon respondent's own testimony pertain-

ing to the standard of care and, therefore, upon the issue of proximate cause. Appellant acknowledges that, as a rule, expert testimony is required in cases involving medical negligence. *Hart v. Steele,* 416 S.W.2d 927 (Mo.1967); *Miller v. Scholl,* 594 S.W.2d 324 (Mo.App.1980). However, appellant contends that an exception to the general rule applies. Citing, *Richeson v. Roebber,* 349 Mo. 132, 159 S.W.2d 658 (1941), appellant argues that expert medical testimony is not always essential in order to make a jury issue in a malpractice case. *Roebber* states that a defendant's own testimony may be taken as establishing the standard of care required.

Upon examination of the record, we agree with appellant upon the issue of standard of care. Respondent's deposition revealed:

> Question: Now, Doctor, in the post-operative care of a patient such as Ms. Pinky, is it important for the operating physician to insure that the little finger is so bandaged as to not interfere with the circulation of that portion of the body following surgery?
>
> Answer: Are you asking me specifically related to putting the dressing on this patient or in a general question?
>
> Question: I'm asking generally.
>
> Answer: In a general question, dressings are put on in a manner to avoid any compromise to the circulation.
>
> Question: Why, sir?
>
> Answer: Because persistent compromise to the circulation can lead to permanent damage to the muscles, nerves and possibly even the loss of an extremity or finger.

Respondent's testimony established that the standard of care required is to put dressings on "in a manner to avoid any compromise to the circulation."

■ However, in order to make a submissible case in a claim of malpractice, three elements must be established. (1) Proof that the act or omission failed to meet the requisite medical standard of care. (2) Proof that the act or omission was performed negligently. (3) A causal connection between the act or omission of a physician to the claimed injury or condition. *Langton v. Brown,* 591 S.W.2d 84 (Mo. App.1979).

■ Taking the evidence in light most favorable to appellant, we find that appellant has made a submissible case. Appellant's evidence showed that the bandage was too tight from the point at which she entered the recovery room. Specifically, appellant told the nurses that the "bandage felt tight and it was cutting off circulation." Further, at appellant's discharge after surgery, appellant complained to respondent that the bandage was too tight. Additionally, in response to respondent's questioning on September 15, 1978, appellant "indicated immediately that she had been in severe pain even in the hospital."

In rebuttal, respondent argues the record establishes the amputation could have occurred as a result of at least two possible causes: bandages which were too tight or as a condition of pre-existing arteriosclerois and blockage of a blood vessel. Respondent contends had the case been allowed to go to the jury, the jurors would have been required to speculate as to which of these possible causes was responsible for appellant's injury. Respondent cites *Silberstein v. Berwald,* 460 S.W.2d 707 (Mo.1970), for the proposition that where an injury occurs from either of two causes, one of which the defendant would be liable for and the other he would not, plaintiff should show with reasonable certainty that the cause for which defendant is liable, produced the injury.

While respondent is correct in his statement of law, the evidence at this time does not support his contention. Respondent's contention is based on an interpretation of the pathologist's reports not on the conclusions contained therein. The pathologist report introduced stated in relevant part: "[s]evere arteriosclerosis is noted in small vessels in the subcutaneous with marked intimal hyperplasia and virtually complete luminal stenosis in one of the vessels.... Diagnosis: Gangrenous changes, distal

portion of left fifth finger. Button, metallic pin and wire, gross only." The pathologist did not connect the gangrene in appellant's finger to arteriosclerosis or luminal stenosis. The report only stated the conditions present in appellant's finger. The report did not establish the cause of the gangrene. There was no evidence that arteriosclerosis or luminal stenosis caused appellant's injury. The only evidence pertaining to the cause of appellant's injury was the testimony of appellant and her husband recounting respondent's statement to them that "the bandage was wrapped too tightly and it cut off the circulation to the little finger." Based on this evidence, the jury would have had only one cause of the injury to consider.

At present, the evidence in the light most favorable to appellant shows the standard of care required is to avoid any compromise to the circulation. Further, appellant's evidence disclosed the bandage did compromise the circulation and respondent had knowledge it was too tight. Lastly, appellant's evidence indicated the compromise of circulation caused gangrene to set in resulting in the loss of appellant's finger.

Appellant has carried her burden of proof by substantial evidence. Therefore, we reverse and remand for a new trial in accordance with this opinion.

Judgment reversed.

SIMON, J., concurs.

CRIST, P.J., dissents in separate opinion.

CRIST, Presiding Judge, dissenting.

I dissent.

It is common knowledge an applied bandage must not cut off blood circulation. But, the cause of the condition found in the pathologist's report may, or may not, have been caused by the doctor's bandage. Competent evidence of causation is lacking. The lack of expert testimony was fatal to plaintiff's case. I would affirm the judgment denying recovery.