Before Division One: Lisa White Hardwick, Presiding Judge, Cynthia L. Martin and Edward R. Ardini, Jr., Judges
Lisa White Hardwick, Judge *617 Kassidy Love appeals the circuit court's entry of summary judgment in favor of J.M. Waring, M.D., Stan D. Avery, CRNA, Saint Luke's Anesthesia Services, P.C., Saint Luke's Health System, Inc., and Saint Luke's East Hospital (collectively, "Respondents") on her negligence claims against them.[1] The court granted summary judgment on the basis that, by not designating an expert witness, Love failed to create a genuine issue of material fact with respect to the causation element of her claims. On appeal, Love contends she was not required to produce expert testimony to establish causation. For reasons explained herein, we affirm.
FACTUAL AND PROCEDURAL HISTORY
At 3:58 a.m. on August 21, 2014, Love delivered a child via C-section at St. Luke's East Hospital. Dr. Waring, a board-certified anesthesiologist, and Avery, a certified nurse anesthetist, served as the anesthesia team during Love's C-section. Avery administered morphine to Love to help relieve pain during the C-section. William Poe, M.D., made an entry in Love's medical chart that stated, "Anesthetic complications: yes: Excessive dose of intrathecal narcotic." Poe explained in the chart:
It was discovered this morning around 0715 that she had actually received 3.0 mg of intrathecal morphine. Pharmacy had put morphine 100 mg/10 ml vial in anesthesia tray instead of 10 mg/ml. Patient had some itching and nausea earlier which have responded to narcotic antagonists. As of now by my personal observation she is sleepy but easily arousable. Respiratory rate was ten per minute by my count while she was dozing before I called her name. She did awaken to verbal stimulation.
Dr. Poe ordered that Love be given naxolone, also known as Narcan, in her IV fluid. This is called a "Narcan drip." Narcan is used to reverse the effects of an opioid such as morphine. Love received additional doses of Narcan throughout the day on August 21, 2014.
According to Dr. Waring and Avery, possible side effects from morphine include suppressed respiratory function, hallucinations or confusion, depression, drowsiness, lethargy, nausea, vomiting, and itching. These side effects can occur if the patient receives a normal dose of morphine or an overdose of morphine.
In addition to morphine, Love was given twelve other medications between 1:52 a.m. and 4:15 a.m. on August 21, 2014, which was approximately two hours before the delivery to fifteen minutes after the delivery. The twelve other medications were ondansetron, nalbuphine, terbutaline, citric acid sodium citrate, bupivacaine, cefazolin, phenylephrine, norphine, oxytocin, fentanyl, midazolam, ketorolac, and ketamine. These twelve medications all have possible side effects, including: (1) decreased respiratory rate (bupivacaine, fentanyl, and midazolam ); (2) hallucinations and/or confusion (fentanyl and ketamine ); (3) depression and/or anxiety (ondansetron, terbutaline, phenylephrine, fentanyl, *618 and midazolam ); (4) drowsiness, lethargy, and/or grogginess (ondansetron, nalbuphine, terbutaline, fentanyl, midazolam, and ketorolac); (5) nausea and/or vomiting (nalbuphine, terbutaline, citric acid sodium citrate, cefazolin, phenylephrine, oxytocin, fentanyl, midazolam, ketorolac, and ketamine ); and (6) itching (ondansetron and fentanyl ).
In August 2016, Love filed a petition against Respondents for negligence. In her petition, Love alleged that she was administered an incorrect dose of morphine on August 21, 2014. She alleged that Dr. Waring and Avery were negligent in: failing to read the label on the morphine given to her; causing her to receive more morphine than was ordered; and failing to verify that the morphine administered to her was given in the dosage that was ordered. Love alleged that Saint Luke's East Anesthesia Services was negligent in: failing to carefully read the label on the morphine given to her; failing to properly follow written orders; failing to properly train its employees; and failing to properly supervise its employees. Lastly, she alleged that Saint Luke's Health System and Saint Luke's East Hospital were negligent in: putting morphine 100 mg/10 ml vial in her anesthesia tray instead of morphine 10 mg/10 ml; failing to properly follow written orders; failing to properly label, or read the label on, the morphine given to her; failing to properly train their employees; and failing to properly supervise their employees.
In her petition and in her deposition testimony, Love asserted that Respondents' negligence caused her to suffer decreased respiratory rate, feelings of being overwhelmed, depression, dark thoughts, sleepiness, nausea, vomiting, and itching. She alleged that all of these injuries continued until about 7:00 p.m. or 8:00 p.m. on August 21, 2014. She also alleged that she was unable to care for, nurture, and bond with her baby "for days after the baby's birth." Love requested damages in excess of $75,000, punitive damages, and costs.
In December 2016, the circuit court entered its case management order setting forth several deadlines for the litigation, including a deadline by which the parties were to designate experts. Pursuant to this order, Love's deadline to designate an expert was March 30, 2017. Love did not designate an expert by that date or at any point thereafter.
Respondents filed motions for summary judgment. In their motions, they asserted that Love bore the burden of establishing causation through expert testimony and that she had not put forth any expert testimony to support her claim that the alleged morphine overdose caused her injuries. After Love filed suggestions in opposition to both motions and Respondents filed replies, the court granted summary judgment in favor of Respondents. Love appeals.
STANDARD OF REVIEW
Appellate review of summary judgment is essentially de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom the judgment was entered. Wills v. Whitlock , 139 S.W.3d 643, 646 (Mo. App. 2004). However, we take as true the facts set forth in support of the summary judgment motion unless contradicted by the non-movant's response. ITT , 854 S.W.2d at 376.
Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c). Where, as in this case, the movant is the defendant, the movant establishes the right to judgment *619 as a matter of law by showing one of the following:
(1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to--and will not be able to--produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.
Roberts v. BJC Health Sys. , 391 S.W.3d 433, 437 (Mo. banc 2013).
ANALYSIS
In her sole point on appeal, Love contends the circuit court erred in granting summary judgment in favor of Respondents based upon its determination that she was required to present expert testimony in support of causation. To make a claim for negligence, a plaintiff must establish: (1) that the defendant had a duty to protect the plaintiff from injury; (2) the defendant breached that duty; and (3) the defendant's breach of duty caused the injury. Brickey v. Concerned Care of Midwest, Inc. , 988 S.W.2d 592, 596 (Mo. App. 1999). In their motions for summary judgment, Respondents asserted that Love would be unable to establish the third element: that their alleged breach of duty caused her injuries.
To establish causation, a plaintiff must show that the defendant's conduct was both the cause in fact and the proximate or legal cause of her injuries. Wright v. Barr , 62 S.W.3d 509, 524 (Mo. App. 2001). To demonstrate cause in fact, the plaintiff must show that, but for the defendant's conduct, her injuries would not have occurred. Callahan v. Cardinal Glennon Hosp. , 863 S.W.2d 852, 860-61 (Mo. banc 1993). To demonstrate proximate or legal cause, the plaintiff must show that her injuries were the "natural and probable consequence of the defendant's conduct." Wright , 62 S.W.3d at 524.
"In a medical malpractice case, where proof of causation requires a certain degree of expertise, the plaintiff must present expert testimony to establish causation." Sundermeyer v. SSM Reg'l Health Servs. , 271 S.W.3d 552, 554 (Mo. banc 2008). This is because in cases where "there is a sophisticated injury, requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding." Brickey , 988 S.W.2d at 596. Hence, expert medical testimony is necessary to prove a causal link between a health care provider's negligence and the plaintiff's injuries " 'except where the want of skill or lack of care is so apparent as to require only common knowledge and experience to understand and judge it.' " Super v. White , 18 S.W.3d 511, 516 (Mo. App. 2000) (citation omitted).
Moreover, "[w]hen the plaintiff relies on expert testimony to provide evidence as to causation when there are two or more possible causes, that testimony must be given to a reasonable degree of medical certainty." Wright , 62 S.W.3d at 525. Indeed, if the plaintiff's injuries may have resulted from either of two causes, one for which the defendant would be liable and the other for which the defendant would not be liable, the plaintiff must show with a reasonable degree of medical certainty that the cause for which the defendant would be liable produced the injury. Mueller v. Bauer , 54 S.W.3d 652, 656 (Mo. App. 2001). Otherwise, "any verdict would be based on speculation and surmise." Steele v. Woods , 327 S.W.2d 187, 195 (Mo. 1959).
Love contends that the fact that she received an incorrect dose of morphine, *620 combined with the fact that she "immediately" began suffering "common symptoms of a morphine overdose" immediately afterwards, was sufficient circumstantial evidence to establish a causal link between the incorrect dose of morphine and her injuries. We disagree.
"[T]he fact that injury follows negligence does not of and in itself create liability." Id. Rather, a causal connection is established "[w]here the logical conclusion from the evidence is that if certain things were properly done certain results would not have occurred, and they did occur[.]" Id. The undisputed medical evidence in this case showed that the side effects of morphine, which include suppressed respiratory function, hallucinations or confusion, depression, drowsiness, lethargy, nausea, vomiting, and itching, can occur if a patient receives either a normal dose of morphineor an overdose of morphine. The undisputed medical evidence also showed that Love received twelve other medications at or around the same time that she received the alleged morphine overdose, and that those twelve other medications also cause the same side effects as morphine. Thus, the undisputed medical evidence indicated that Love's injuries could have been caused by a morphine overdose, for which Respondents would be liable, or Love's injuries could have been caused by a normal dose of morphine or some or all of the twelve other medications she received that day, for which Respondents would not be liable. In this case, we cannot say that the logical conclusion from the evidence is that, if certain things (the administration of morphine to Love) were properly done, certain results (Love's injuries) would not have occurred. Id. Love's injuries could have reasonably come from two or more possible causes, one or more of which was not the fault of Respondents; consequently, she was required to show with a reasonable degree of medical certainty that it was the alleged morphine overdose that caused those injuries. Mueller , 54 S.W.3d at 656.
The only way for Love to meet this burden was through expert medical testimony. The nature of each medication's side effects, the doses necessary to manifest those effects, and the biomedical interaction of thirteen medications are all matters beyond that of a layperson's common knowledge and experience. See Kappel v. Slickman , 401 S.W.2d 451, 454 (Mo. 1966) ; Delisi v. St. Luke's Episcopal-Presbyterian Hosp., Inc. , 701 S.W.2d 170, 176 (Mo. App. 1985). Because Love's injuries could have been caused by a morphine overdose, a normal dose of morphine, or some or all of the twelve other medications she received that day, her injuries were sophisticated and required scientific technique for diagnosis. See Super , 18 S.W.3d at 516 ; Delisi , 701 S.W.2d at 176. Therefore, Love was required to produce expert testimony that, with a reasonable degree of medical certainty, the alleged morphine overdose caused her injuries. Wright , 62 S.W.3d at 525.
For these same reasons, we also reject Love's contention that a jury could infer causation in this case under the sudden onset doctrine. Pursuant to the sudden onset doctrine, "causation may be established through the testimony of a lay witness 'where the obvious symptoms of the injury follow the trauma immediately, or with only short delay, and the injury is the type that is normally sustained in the kind of trauma involved.' " Brown for Estate of Kruse v. Seven Trails Investors, LLC , 456 S.W.3d 864, 870 (Mo. App. 2014) (citation omitted). The side effects of all of the medications that Love received are not "readily separable based on common knowledge" from her alleged injuries; hence, the sudden onset doctrine does not *621 apply, as "this is exactly the type of highly complex case where expert medical testimony is necessary to establish causation." Id. See also Brickey , 988 S.W.2d at 597.
Alternatively, Love argues that she did, in fact, present expert medical testimony on causation in her response to the summary judgment motions. In Respondents' statement of uncontroverted facts, they alleged that "[n]o health care provider has testified in this case that any of the conditions that Kassidy Love alleges she suffered from on August 21, 2014 were caused by an alleged overdose of morphine." Love denied this statement. To support her denial, she alleged that Dr. Poe told her that she was going to be given Narcan"to help reverse the excessive morphine" she received. Love also alleged that two nurses told her that her nausea and vomiting was related to the morphine she received. Additionally, Love alleged that another nurse told her that her depression and anxiety were because of the "medication" she received. Love insists that this was expert medical testimony establishing causation. We disagree.
Love's responsive allegations were not based on any health care provider's testimony but, instead, were based on statements she made in her own deposition about what health care providers, three of whom were unidentified, had allegedly told her. In none of these statements did Dr. Poe or the three unidentified nurses opine, with a reasonable degree of medical certainty, that the alleged morphine overdose caused Love's injuries. Furthermore, in one of the statements Love cited, the nurse told her that her depression and anxiety were because of the "medication" she received. In addition to morphine, five other medications that Love received that day have depression and/or anxiety as potential side effects. Love's allegations regarding what health care providers allegedly told her did not constitute expert medical testimony and were insufficient to create a genuine issue of fact regarding whether the alleged morphine overdose caused her injuries. Consequently, the circuit court properly granted summary judgment in favor of Respondents. Love's point on appeal is denied.
CONCLUSION
The judgment is affirmed.
All Concur.

In the circuit court, Respondents divided themselves into two groups: the Anesthesia Defendants, which consisted of Waring, Avery, and Saint Luke's Anesthesia Services, P.C.; and the Hospital Defendants, which consisted of Saint Luke's Health System, Inc., and Saint Luke's East Hospital. Each group filed its own answer and motion for summary judgment, and the court entered summary judgment separately in favor of each group. Because the judgments for both groups are virtually identical and their briefs assert similar grounds for affirming those judgments, this court will not distinguish between the two groups and will refer to them collectively as "Respondents."