STATE of Missouri, Respondent,

v.

**Fred JORDAN, Appellant.**

No. 53950.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 5, 1989.

Mary C. McWilliams, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Karen Ann King, John P. Pollard, Asst. Attys. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant, Fred Jordan, appeals his convictions by a jury for possession of a Schedule I, and a Schedule II controlled substance, in violation of RSMo § 195.020 (1986). Defendant was sentenced as a class X offender under RSMo § 558.019 (1986) and received two concurrent terms of fifteen years imprisonment. Defendant asserts three points of error on appeal; 1) the trial court's classification of defendant as a class X offender is unconstitutional as applied; 2) the trial court's denial of defendant's motion to strike for cause venireman Maleas was an abuse of discretion; and 3) the trial court's denial of defendant's motion to suppress certain evidence is in violation of defendant's constitutional rights because it was the product of an illegal search and seizure. We affirm defendant's convictions and remand for resentencing.

The record reveals that on December 17, 1986, at 9:30 p.m. two St. Louis City police officers were on patrol in north St. Louis. The officers observed defendant standing alone at the corner of Vandeventer and Greer. Upon seeing the police car the defendant turned and ran down Greer. The officers then turned on Greer to follow and observe the defendant. As he ran both officers witnessed defendant drop an object from his hand and then discontinue running. The officers stopped their vehicle, one retrieving the object while the other approached defendant. The object was an unpackaged syringe.

The officers then requested defendant to explain his possession of the syringe and asked whether he was diabetic. Defendant did not articulate a response but mumbled an inaudible reply. Defendant's cheeks were puffed out, he was sweating profusely and he appeared extremely nervous. Defendant then began to cough violently, at which time a clear plastic bag flew from defendant's mouth and hit one of the officers in the chest. The bag contained thirty capsules filled with what appeared to the officers to be cocaine. The officers then placed defendant under arrest and read him his *Miranda* rights. Subsequently defendant spit another plastic bag onto the

sidewalk. Inside the bag were twenty-five capsules containing a tan, brownish substance.

The contents of these capsules were later subjected to chemical testing at the St. Louis Police Department Crime Laboratory. The contents of the thirty capsules first "coughed up" by the defendant were identified as cocaine. The brownish substance in the other bag was identified as heroin.

Defendant was charged by indictment on February 2, 1987, with two counts of possession of a controlled substance. RSMo § 195.020 (1986). On the day of the trial, September 9, 1987, the State filed a substitute information charging defendant as a class X offender under RSMo § 558.019 (1986). (Effective January 1, 1987).

Prior to the trial, counsel for defendant filed a motion to suppress the evidence obtained on the street. At the hearing, after presentation of evidence, the trial court denied defendant's motion. Further facts will be presented as required by the discussion of the issues.

In defendant's first point he asserts that the trial court erred in finding and sentencing him as a class X offender under RSMo § 558.019 (1986). Defendant argues that the statute is an ex post facto law as applied to him in this case because it increased the minimum punishment after the commission of the offense. Defendant further asserts that the trial court's retroactive application of § 558.019 is in violation of article 1, section 10 of the United States Constitution, as well as article 1, section 13 of the Missouri Constitution.

A "class X offender" is one who has previously pled guilty to or has been found guilty of three felonies committed at different times. RSMo § 558.019.4(3) (1986). As a class X offender, the minimum prison term which the defendant must serve is eighty percent of his sentence. RSMo § 558.019.2(3) (1986). Under the law in effect at the time of defendant's offenses he would have been eligible for parole, at the discretion of the parole board, after having served only one-third of his sentence. RSMo § 217.690(2) (1986). Prior to the effective date of § 558.019, defendant could have been classified as a "persistent offender," and subject to an extended term of imprisonment. RSMo § 558.016 (1986).

In order to fall within the ex post facto prohibition a law must be retrospective, applying to events occurring before its effective date of enactment. In addition, the law must affect or alter substantial personal rights of the offender affected by it. *State v. Lawhorn*, 762 S.W.2d 820, 824 (Mo. banc 1988).

Section 558.019 as applied in this case falls squarely within the above definition. The record shows that defendant was convicted of offenses which occurred on December 17, 1986. Section 558.019 did not become effective until January 1, 1987. Therefore, the trial court erred in applying the statute to events which occurred before its effective date. Additionally, the application of this statute is more than a change in "modes of procedure which do not affect matters of substance." *State v. Lawhorn*, 762 S.W.2d 820, 824 (Mo. banc 1988) (quoting *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987)). Therefore, this case is remanded for the purpose of resentencing under the statutory guidelines in effect at the time of defendant's offenses.

In defendant's second point he asserts that the trial court abused its discretion by denying defendant's motion to challenge for cause venireman Tom Maleas. Defendant argues that Mr. Maleas was unqualified to sit on the jury panel because he answered in the negative twice when asked whether he would base his verdict on the evidence. Additionally, defendant argues that Mr. Maleas was unqualified due to his distaste for jury service and limited understanding of courtroom vocabulary.

At the outset this court recognizes the appropriate standard of review. "In determining the qualifications of a prospective juror the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion." *State v. Hopkins,*

687 S.W.2d 188, 189 (Mo. banc 1985) (quoting *State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977) *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978)). In determining when a challenge for cause should be sustained each case must be decided on its facts. *State v. Stewart*, 692 S.W.2d 295, 298 (Mo. banc 1985). The qualifications of a prospective juror are not determined by a single response, but are made on the basis of the entire voir dire examination. *State v. Murray*, 744 S.W.2d 762, 769 (Mo. banc 1988).

Defendant relies on *State v. Byrd*, 646 S.W.2d 419, 424 (Mo.App., W.D.1983), as factually on point and as controlling legal precedent. The court in *Byrd* held that a venireperson who equivocates as to his or her ability to follow instructions of law must either specifically recant that doubt or be subject to a challenge for cause as an unqualified juror. This is a correct statement of the law. However, defendant has focused this court on isolated responses and overlooked subsequent statements by Mr. Maleas indicating his ability to follow instructions and understand the proceedings.

In *Byrd*, certain jurors voiced doubt as to their ability to refrain from drawing an adverse inference from the defendant's refusal to take the stand. To clear this doubt the trial court again instructed the venire that no presumption of guilt could be made by defendant's failure to testify and that the burden of proof is on the State. The court then, addressing the entire group, requested any venireperson who could not follow these instructions to raise their hand. The court later denied challenges for cause as to those jurors on the ground that the jurors' silence recanted any previous doubt. The trial court was reversed as to this issue on appeal.

█ In the case at hand Mr. Maleas never clearly stated that he could not follow instructions. At most he demonstrated impaired ability to understand technical courtroom vocabulary. Although Mr. Maleas was equivocal at first, as to whether he could base his verdict on the evidence, his subsequent responses to specific individual questioning, when taken as a whole, recanted any previous doubt. The record reveals that the trial court's ruling was not clearly an abuse of discretion. Point denied.

In defendant's third point he asserts that the trial court erred in denying his motion to suppress evidence, namely a syringe and two cellophane packets containing cocaine and heroin. Defendant argues that this evidence was the product of an illegal search and seizure in violation of the fourth and fourteenth amendments of the United States Constitution and article 1, section 15 of the Missouri Constitution. Defendant's argument on this point is without merit.

An appellate court should uphold the decision of a trial court as to a motion to suppress if the evidence is sufficient to sustain its findings. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985). Furthermore, the reviewing court must defer to the trial court's determinations as to the credibility of witnesses and the weight of the evidence. *State v. Beck*, 687 S.W.2d 155, 157–58 (Mo. banc 1985).

The test for "seizure of a person," thus triggering fourth amendment rights, is whether the person's freedom of movement has been restrained by physical force or show of authority. *State v. Dixon*, 655 S.W.2d 547, 552 (Mo.App., E.D.1983). Such restraint exists when a "reasonable person would have believed he was not free to leave." *Id.* at 552.

█ A police officer is not required to have probable cause to make an investigatory stop. *State v. Simmons*, 734 S.W.2d 513, 514 (Mo.App., E.D.1987). "The minimal standard of articulable justification required by the fourth amendment for an investigative stop is whether the police officers were aware of particularized objective facts which, taken together with rational inferences from those facts, reasonably warranted suspicion that a crime was being committed." *U.S. v. Jones*, 759 F.2d 633, 642 (8th Cir.), *cert. denied*, 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985). Furthermore, a court may take into account any added meaning certain conduct might suggest to experienced officers trained in

arts of observation and crime detection. *Id.* at 642–43.

■ Defendant's argument is based on the fallacious premise that a seizure, requiring probable cause, occurred the moment the police cruiser turned on Greer to follow defendant. This court concludes that no seizure occurred until after the officers witnessed defendant's flight and approached defendant with the abandoned syringe in hand. These facts warranted the questioning of the person in the nature of an investigative stop.

Defendant relies on *In re D.J.*, 532 A.2d 138, 143 (D.C.App.1987), to support his unfounded position as to when a fourth amendment seizure of defendant occurred. In *D.J.* the defendant was observed from an unmarked police car standing alone on a curb. When the defendant made eye contact with one of the officers, he turned and walked in the opposite direction from that which the police car was traveling. The officers backed up and upon reaching defendant, he again turned and walked the opposite direction. As the unmarked car approached defendant for the third time the officers stopped the car, got out and approached the defendant on foot, at which time the defendant ran and the officers pursued.

The determination of the court was that a seizure had occurred the moment the officers pursued defendant on foot. The court held that an attempt to evade police, without more is insufficient grounds to justify a *"Terry* Stop;" *id.* at 142; that is, a stop based on reasonable suspicion allowing an officer to perform a pat-down type search. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, the court was careful to distinguish these facts from the case in which a suspect breaks into a sprint. *In re D.J.*, 532 A.2d at 141.

■ The record of the case at hand reveals that the defendant did in fact "break into a sprint." Additionally, the officers witnessed the defendant discard an object during his flight. Furthermore, when the officers did approach the defendant the intrusion on his privacy was less than that imposed by a full *"Terry* Stop." The offi-

cers merely approached defendant armed with the objectively suspicious facts of flight, a discarded syringe, and asked defendant a question. Law enforcement officers may approach an individual in a public place and put questions to him if he is willing to listen. *Id.* at 141–42. We discern no violation of defendant's fourth amendment rights in connection with this encounter and therefore we affirm the trial court's ruling on defendant's motion to suppress evidence.

GRIMM, P.J., and KAROHL, J., concur.