Linda JOY, Individually and as Personal Representative of the Estate of Wesley Leon Joy, Appellant,

v.

Stephen K. MORRISON, M.D., and John Wordy Buckner III, M.D., Respondents.

No. SC 88690.

Supreme Court of Missouri, En Banc.

June 10, 2008.

---

David W. Ransin, Springfield, for Appellant.

Kent O. Hyde, Shannon A. Vahle, Bruce E. Hunt, Springfield, for Respondents.

PER CURIAM.[1]

## Introduction

Linda Joy appeals the trial court's judgment entered in favor of Drs. Stephen K. Morrison and John Wordy Buckner III following a jury trial on Joy's medical malpractice claim.[2] Joy contends the trial court should have excused a potential juror, Clarence Shirkey, for cause. The trial court did not abuse its discretion in failing to do so. The judgment is affirmed.

### Joy's argument

Joy asserts that Shirkey, based on his examination, was not a properly qualified juror to serve in this case. She maintains that during voir dire he did not recant his "strong feelings" and "strong bias" regarding lawsuits in general nor was he rehabilitated by counsel on those issues. She contends that the trial court erred in failing to conduct its own inquiry of Shirkey and in overruling the challenge for cause.

### The voir dire and court ruling

During voir dire Shirkey informed the trial court that he worked as director of supply and development for Tracker Marine Group; his wife was a homemaker; he has grown children; and he lived in Greene County for five years. When another juror stated that doctors sometimes make mistakes and "you should just live with the result," Shirkey indicated he

agreed with that statement. Shirkey was further examined by counsel.[3]

Following voir dire, the parties presented their challenges for cause to the trial court. The following exchange regarding Shirkey took place at that time:

The Court: Yeah, he was one of those that expressed a bias for the doctors but then recanted, and—I think, under [Counsel for Buckner's] re-examination. How bad was he?

[Counsel for Joy]: I've got—I've got a number of things with [Counsel for Buckner]. He said he was a firm believer that verdicts are way out of line.

The Court: Get a lot of that.

[Counsel for Joy]: Wants to go on the record, and he was troubled about the fact that the lawsuit is against the doctor. That bothers him. I asked if it was a car wreck or health care—that was early this morning. He was—he was pretty vocal about that.

[Counsel for Morrison]: Well, being bothered by a proposition, I don't think, is fair, Judge. We, again, flat put the question to him, and he had no hesitation whatsoever, and that included a finding for [Joy].

The Court: You know, I understand [Counsel for Joy's] concern that jumping back in and just making somebody— shaming them into saying they would be fair doesn't clear the boards, but in Mr. Shirkey's case, I felt pretty good about

---

**1.** This Court transferred this case after a per curiam opinion by the Court of Appeals, Southern District. Portions of that opinion are used without further attribution. This Court has jurisdiction. *Mo. Const. article V, section 10.*

**2.** An extensive recitation of the claims is not necessary. Wesley Joy was treated in conjunction with a cardiac catheterization and a coronary artery bypass that necessitated the removal of a vein from his leg. Complica-

tions arose following the removal of the vein from his leg, and, eventually, the leg was amputated above the knee. Wesley and Linda Joy filed suit. At trial, the jury found no liability on the part of the doctors. While this case was pending on appeal, Wesley Joy died, and Linda Joy was substituted as the personal representative of Wesley Joy's estate.

**3.** The exchanges between counsel and Shirkey are set out in the appendix.

the response. I'm going to decline to strike Clarence Shirkey, No. 19, for cause.

Because Joy did not use a peremptory strike to remove him, Shirkey served on the jury.

**The standard of review—A real probability of injury need not be shown**

 In this case, Joy contends the trial court erred in failing to excuse Shirkey from jury service. As noted in *State v. Christeson*, 50 S.W.3d 251, 264 (Mo. banc 2001):

A trial court's ruling on a challenge for cause will be upheld on appeal unless it is clearly against the evidence and is a clear abuse of discretion. *State v. Smith*, 32 S.W.3d 532, 544 (Mo. banc 2000). "The relevant question is whether a venireperson's beliefs preclude following the court's instructions so as to 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *State v. Johnson*, 22 S.W.3d 183, 187 (Mo. banc 2000).... A venireperson's qualifications as a prospective juror are not determined by an answer to a single question, but by the entire examination. *Id.* at 188. The trial court is in the best position to evaluate a venireperson's qualifications to serve as a juror and has broad discretion in making the evaluation. *Id.*

 As noted in *State v. Olinghouse*, 605 S.W.2d 58, 68 (Mo. banc 1980), a trial court necessarily and properly has consid-erable discretion in *control and conduct of voir dire examination,* and an appellate court will differ or interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion *and* a real probability of injury to the complaining party. However, the *determination of the juror's qualifications* is a matter for the trial court in the exercise of sound judicial discretion, and an appellate court will reject the trial court's determination only upon a clear showing of abuse of discretion. *Olinghouse* at 69.

*State v. Betts,* 646 S.W.2d 94, 98–99 (Mo. banc 1983), failed to note this distinction. *Betts* involved the qualifications of a juror, but applied the standard applicable to the conduct and control of voir dire. In support of this standard, *Betts* cited two cases stating the correct standard for the conduct and control of voir dire [4] and one case involving the qualifications of a juror that did not contain the additional requirement of a showing of a real probability of injury to the complaining party.[5] None of the citations supports *Betts'* holding, and *Betts* does not discuss or otherwise comment that it intends to change the correct standard for juror qualification cases.

*State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983), citing *Betts* without discussion,[6] continued to conflate the two standards of review stated in *Olinghouse.* Since *Smith* was decided, many cases cite the *Smith* standard to establish that a showing of a real probability of injury is required in juror qualification cases.[7] At

4. *State v. Scott,* 515 S.W.2d 524, 527 (Mo. 1974), and *State v. Reed,* 629 S.W.2d 424, 426 (Mo.App.1982).

5. *State v. Pennington,* 642 S.W.2d 646 (Mo. banc 1982).

6. *Smith* cites to *State v. Betts,* 642 S.W.2d 604 (Mo. banc 1982), but that case does not in-volve a challenge to a failure to excuse a juror.

7. Some of cases include: *State v. Skillicorn,* 944 S.W.2d 877, 892 (Mo. banc 1997); *State v. Copeland,* 928 S.W.2d 828, 852 (Mo. banc 1996); *State v. Wise,* 879 S.W.2d 494, 512 (Mo. banc 1994); *State v. Feltrop,* 803 S.W.2d 1, 6 (Mo. banc 1991); *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989); *State v.*

the same time, cases such as *Christeson* apply the correct standard, which does not require such a showing.[8]

■ To the extent *Betts, Smith* and their progeny require a showing of a real probability of injury with respect to the trial court's ruling on the qualification of a potential juror, they are overruled. The general rule in Missouri is that a juror's testimony about jury misconduct allegedly affecting deliberations may not be used to impeach the jury's verdict. *Travis v. Stone*, 66 S.W.3d 1, 4 (Mo. banc 2002). In light of this rule, the available evidence to demonstrate a real probability of injury with respect to the qualifications of a juror is extremely limited. This is not so with the manner and conduct of voir dire; hence, the different standards of review.

### The effect and application of section 494.470[9]

Section 494.470 states in pertinent part:

1. No witness or person summoned as a witness in any cause, no person who has formed or expressed an opinion concerning the matter or any material fact in controversy in any case that may influence the judgment of such person, and no person who is kin to either party in a civil case or to the injured party,

accused, or prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause.

2. Persons whose opinions or beliefs preclude them from following the law as declared by the court in its instructions are ineligible to serve as jurors on that case.

The difference between subsections 1 and 2 is that under subsection 1 such persons having "formed or expressed an opinion concerning the matter or any material fact in controversy" shall not be sworn as a juror in the same cause. Subsection 2, on the other hand, precludes potential jurors who are unable to follow the court's instructions due to their "opinions or beliefs."

■ Joy asserts that subsection 1 should have guided the trial court in determining whether to disqualify Shirkey. Nothing in the record, however, suggests Shirkey had any knowledge concerning the matter or any material fact in controversy. At the time of voir dire, Shirkey only had basic information, such as the fact that the litigation involved a medical malpractice action. The opinions and beliefs expressed by Shirkey related to his opinions about lawsuits and doctors in general and had no

---

*Mathenia*, 702 S.W.2d 840, 844 (Mo. banc 1986); *State v. Wilson*, 169 S.W.3d 571, 574 (Mo.App.2005); *Lopez v. Three Rivers Elec. Co-op., Inc.*, 92 S.W.3d 165, 169 (Mo.App. 2002); *State v. Clark*, 55 S.W.3d 398, 403 (Mo.App.2001); *State v. Murphy*, 989 S.W.2d 637, 640 (Mo.App.1999); *State v. Brown*, 916 S.W.2d 420, 422 (Mo.App.1996); *State v. Williams*, 860 S.W.2d 7, 9 (Mo.App.1993); *State v. Shanks*, 809 S.W.2d 413, 416 (Mo. App.1991); *State v. Leisure*, 772 S.W.2d 674, 680 (Mo.App.1989); *State v. Weatherspoon*, 728 S.W.2d 267, 271 (Mo.App.1987); *State v. Money*, 697 S.W.2d 269, 270 (Mo.App.1985).

**8.** For example: *State v. Tisius*, 92 S.W.3d 751, 763 (Mo. banc 2002); *State v. Hall*, 955

S.W.2d 198, 204 (Mo. banc 1997); *State v. Mahurin*, 799 S.W.2d 840, 845 (Mo. banc 1990); *State v. Leisure*, 749 S.W.2d 366, 371 (Mo. banc 1988); *State v. Johnson*, 722 S.W.2d 62, 65 (Mo. banc 1986); *State v. Bolds*, 11 S.W.3d 633, 640 (Mo.App.1999); *State v. Anderson*, 862 S.W.2d 425, 436 (Mo. App.1993); *State v. Culkin*, 791 S.W.2d 803, 808 (Mo.App.1990); *State v. Jordan*, 778 S.W.2d 283, 285–86 (Mo.App.1989); *State v. Schwer*, 757 S.W.2d 258, 262 (Mo.App.1988); *State v. Clark*, 711 S.W.2d 885, 889 (Mo.App. 1986).

**9.** All statutory references are to RSMo 2000.

relation to anything specific to the facts of the case.

Similarly, Shirkey's opinions and beliefs were not such that would have precluded him from following the directions of the trial court and required disqualification under subsection 2.

Upon questioning by Joy's counsel, Shirkey initially expressed his concern regarding lawsuits that resulted in the award of excessive damages. He stated "things are way out of hand in the country as far as lawsuits against doctors or whoever" in which people are receiving awards of "millions of dollars for this or that. . . ." Shirkey noted that he had a "strong bias" against "lawsuits in general" and that his concern was related to the amount of money awarded as opposed to the fact that people were being compensated for their injuries. He stated he would have a problem awarding a "substantial amount of money," but there was no specific amount of money that he thought was per se excessive. When asked how he felt about lawsuits against doctors specifically, he stated he "probably would be biased for the doctors," but could be "persuad[ed]" in the other direction. Shirkey admitted he was "substantially" troubled by lawsuits and his opinions "could" affect his "ability to listen to the experts and give them fair credence."

Upon questioning by Morrison's counsel, Shirkey responded that if he found negligence, he would be able to award damages in favor of Joy, and if he did not find negligence, he would be able to find in favor of the doctors.

Similarly, he was asked by counsel for Buckner if he could be "fair and unbiased if [he] were selected on this jury," and he responded that he "could be fair." He stated that neither side had "a real advantage" in his opinion and that he could be equally fair to all parties. He reiterated

that he is a "firm believer that the awards by the Court and the jury [are] way out of line . . . ," but he could be a fair juror. He insisted he would be "fair and reasonable" in evaluating the evidence and the opinions of the other jurors.

Additionally, there were numerous questions posed to the entire venire to which Shirkey did not feel compelled to respond. For instance, the potential jurors were asked to raise their hands if any of them had a problem "about the mere fact that this is a lawsuit against doctors;" if they felt that they could not follow the trial court's instructions; or if they could not "keep an open mind until [they had] heard all of the evidence."

Likewise, Shirkey made no response when the venire panel was asked if anyone felt "that a doctor not hurting anybody by intention, but failing to use the same standard of care that a reasonably prudent and skilled physician would . . . should not be held accountable . . . for the injuries that caused this." Also, Shirkey did not respond when asked if any members of the panel could not follow the standard of care that had been read to them aloud during voir dire; if any veniremen could not apply the burden of proof as explained to them by counsel and the trial court; or if any of the venire panel members could not find liability, apportion fault or award damages based on the instructions and evidence presented.

While Shirkey may have expressed a general feeling against excessive lawsuits, it was not clear that that translated into a bias against Joy. *Rogers v. B.G. Transit Corp.*, 949 S.W.2d 151, 156 (Mo.App.1997).

Mere equivocation is not enough to disqualify a juror. *McClain v. Petkovich*, 848 S.W.2d 33, 35 (Mo.App. 1993). If the challenged venireperson subsequently reassures the court that he can

be impartial, the bare possibility of prejudice will not deprive the judge of discretion to seat the venireperson. *Id.* Initial reservations expressed by venirepersons do not determine their qualifications; consideration of the entire voir dire examination of the venireperson is determinative. *State v. Feltrop,* 803 S.W.2d 1, 8 (Mo. banc 1991).

Here, although Shirkey gave some answers during voir dire that raised the possibility that he was prejudiced, the trial court did not abuse its discretion in finding that the tenor of his testimony overall was that he would be fair and impartial. *McClain,* 848 S.W.2d at 35.

### Independent examination by the judge

■ A failure by a trial judge to question independently a potential juror to explore possible prejudice may undercut any basis for a trial judge's exercise of discretion and constitute reversible error. *Acetylene Gas Co. v. Oliver,* 939 S.W.2d 404, 411 (Mo.App.1996). Such an inquiry was not necessary in the present matter, because any potential equivocation or possible prejudice in Shirkey's initial responses was cleared up by the voir dire questioning.

■ The critical question in these situations is always whether the challenged venireperson indicated unequivocally his or her ability to fairly and impartially evaluate the evidence. *Id.* In this connection, it is proper for the trial court to consider the juror's testimony concerning his or her ability to act impartially. *Ray v. Gream,* 860 S.W.2d 325, 334 (Mo. banc 1993). The trial court is not prohibited from basing its determination on the opinions or conclusions of the jurors, but the trial court must make an independent determination of the juror's qualifications. *Id.* That task is accomplished when the trial court reviews and evaluates the juror's conclusions and weighs them against the earlier admissions of prejudice. *Id.*

The trial court declined to strike Shirkey because it felt "pretty good about" Shirkey's responses to questioning regarding his ability to be fair and impartial. The trial court, being in a better position to evaluate the responses, found Shirkey's testimony to be an unequivocal indication that Shirkey could evaluate the evidence fairly and impartially, such that it was unnecessary for the trial court to independently voir dire Shirkey.

### Conclusion

The trial court did not abuse its discretion in failing to strike Shirkey for cause. The judgment of the trial court is affirmed.

All concur.

### APPENDIX

The following exchanges took place between counsel and Shirkey:

[Shirkey]: I wasn't going to say anything, but I think that things are way out of hand in the country as far as lawsuits against doctors or whoever. Some of the judgments that you read about, you know, millions of dollars for this or that, and it—

[Counsel for Joy]: They sound crazy, don't they?

[Shirkey]: Yeah, they sound crazy, so I just want to go on record.

[Counsel for Joy]: And, please—and I'll use you as an example, if I may, please—don't be shy about telling us. The Judge already told you, we don't want to have to try this case again because of a mistrial or something else. We have to know these things from you, and that's why it's going to take all day to pick this jury, because there are a lot of strong feelings on both sides of these issues. And we need to know about it. So don't apologize about telling us.

But you raise a slightly different topic about all other lawsuits, and I'm going to talk about that in a minute, or amounts of dollars the juries have signed verdicts for.

Let me just focus on this doctor lawsuit type of issue like we've been talking about. How do you feel about that issue?

[Shirkey]: I don't know. I—I probably would be biased for the doctors.

[Counsel for Joy]: You would be?

[Shirkey]: Probably, unless you could persuade me.

[Counsel for Joy]: And that's kind of a subset of the bigger issue of just lawsuits in general, right?

[Shirkey]: Yes.

[Counsel for Joy]: And you have strong feelings about lawsuits in general that you have a strong bias against?

[Shirkey]: Yes.

[Counsel for Joy]: And I'll just tell you that the jury will be asked to award a substantial amount of money. We can't— we can't go back in time. We can talk about future time, but we can't go back in time and change anything, and the civil law only allows compensation and to make up for and help fix things with money. And we're going to talk about that in the future, later this morning or this afternoon.

But that whole concept bothers you.

[Shirkey]: I would say it probably does, yes.

[Counsel for Joy]: And I'm not talking amounts of money, just giving the money for injuries.

[Shirkey]: Oh, no, that doesn't.

[Counsel for Joy]: Okay. But it's the amounts of money?

[Shirkey]: Right.

[Counsel for Joy]: What kinds of amounts bother you?

[Shirkey]: Well, you hear McDonald's, somebody that spills coffee, they get $3 million. You wonder what in the world is going on?

[Counsel for Joy]: Uh-huh.

[Shirkey]: Just use that as an example.

[Counsel for Joy]: Well, and I feel the same way, and I'm sure other people here do, too. But you realize this isn't a McDonald's coffee case?

[Shirkey]: That's right.

[Counsel for Joy]: There's no allegation of spilling coffee. McDonald's isn't here. Can you put that completely out of your mind?

[Shirkey]: Yes.

[Counsel for Joy]: Okay. You kind of hesitated.

[Shirkey]: No, no, I can put that out of my mind.

[Counsel for Joy]: We'll come back to this in a little bit, but while you're standing, let me cover it with you while you have it in your mind.

In the context of signing a verdict for a large amount of money, would—and you haven't heard the evidence, you don't know anything about the claims—the mere fact that it's a large amount of money, is there a number at which you'd say I won't sign that verdict regardless of the evidence?

[Shirkey]: No.

[Counsel for Joy]: Okay. We'll come back and talk about that a little bit more, Mr. Shirkey, but just so that I'm—I've got my notes clear, on the issue of lawsuits against doctors, that does trouble you substantially, that in and of—by itself?

[Shirkey]: Yes.

[Counsel for Joy]: And that might very well affect your ability to listen to the experts and give them fair credence?

[Shirkey]: It could.

[Counsel for Joy]: Okay. Thank you, sir.

Following questioning by Joy's counsel, Morrison's counsel inquired of Shirkey:

[Counsel for Morrison]: If—if you're—if you believe there's negligence and there's damages and you get to decide what they are and how much, you can do that?

[Shirkey]: Yes.

[Counsel for Morrison]: And if you believe there's no negligence, you also can find in favor of the doctors?

[Shirkey]: Yes.

Thereafter, Buckner's counsel asked the following of Shirkey:

[Counsel for Buckner]: I had written down that at one point in time you made a comment to the effect that you had a concern that you might be biased in favor of the doctor, and you would not say there was any particular dollar amounts that you really could commit to without knowing anything further, and that those things could cause problems.

Now, after having said that, you've heard my line of questions about not only can you be fair and unbiased, but would you be fair and unbiased if you were selected on this jury?

We all are a compendium of our experiences, our background. If you are selected to serve on this jury, would you be—starting out, would you be equally fair to both the doctors and Mr. and Mrs. Joy? Or do one side or the other start out with a real advantage.

[Shirkey]: No, I don't believe they do. I think I could be fair.

[Counsel for Buckner]: Okay.

[Shirkey]: You know, I'm a firm believer that the awards by the Court and the jury is way out of line. I think it's—you know.

[Counsel for Buckner]: I want to cut to the chase. I want to know if you folks will tell the Court and jury that if you're selected you will be fair, and your answer is you would be?

[Shirkey]: Yes.

[Counsel for Buckner]: Okay. And then as far as talking about dollar amounts for—if you were to find in favor of [Joy], trying to commit anybody to a dollar amount in the future without having heard any evidence, is that the problem that you had with those lines of questions?

[Shirkey]: No.

[Counsel for Buckner]: Okay. So as far as—as far as dollar amounts, would you be fair and reasonable and would you listen to the other jurors if you, in fact, did find for [Joy]—which I don't think you will—but if you did, would you take into account everything they said and mix in with the group?

[Shirkey]: Well, you said two key words, fair and reasonable.

[Counsel for Buckner]: Sure.

[Shirkey]: Yes.