

# In the Missouri Court of Appeals
# Eastern District

<u>SPECIAL DIVISION</u>

| | | |
|---|---|---|
| ANDREW DENNEY, | ) | ED110498 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| v. | ) | #20SL-CC02026 |
| | ) | |
| SYBERG'S WESTPORT, INC., | ) | Honorable Jason D. Dodson |
| D/B/A SYBERG'S, | ) | |
| | ) | |
| Respondent | ) | Filed: April 11, 2023 |

Andrew Denney (hereinafter "Denney") appeals the circuit court's judgment against Syberg's Westport, Inc., (hereinafter "Syberg's"), for injuries he sustained following an allergic reaction to seafood while dining at a Syberg's restaurant. Denney asserts eight points on appeal claiming the circuit court erred by improperly instructing the jury regarding comparative fault, excluding evidence of symptoms and treatment after he left the restaurant, overruling his objections to closing argument, and refusing to strike venirepersons for cause after they expressed bias against him. The judgment is affirmed.

## Factual and Procedural Background[1]

In April 2015, Denney, who has a serious seafood allergy, dined at a buffet hosted by Syberg's. The buffet featured a shrimp station and other food offerings. After eating crab-stuffed cod, he experienced itchy skin, chest pain and swelling in his throat which he believed was caused by an allergic reaction to the food he had eaten. He took six anti-allergy tablets and then felt nauseous and began defecating in his clothing. Paramedics arrived and administered additional anti-allergy medication intravenously. Denney acknowledged his symptoms had improved and refused the paramedics' offer to transport him to the hospital.

Denney filed suit against Syberg's alleging negligence, breach of warranty, and negligent infliction of emotional distress, he alleged a restaurant employee misinformed him the crab-stuffed cod dish was actually hash browns. Syberg's filed an answer denying Denney's allegations and asserting his injuries, if any, were caused by his comparative fault in failing to inspect the food and take precautions due to his alleged seafood allergy.

Following a two-day trial, the jury returned a verdict finding Denney's damages were $50,000, but that he was 90% at fault. The circuit court entered a judgment on the jury's verdict and awarded Denney $5,000 in damages.

Denney appeals. Additional facts pertinent to the resolution of Denney's specific points on appeal will be discussed as necessary.

## Instructional Error

Denney's first three points claim the circuit court erroneously instructed the jury on comparative fault. The issue of whether the jury was instructed properly is a question of law that is reviewed *de novo*. *Hervey v. Mo. Dept. of Corrections*, 379 S.W.3d 156, 159 (Mo. banc 2012).

---

[1] This Court reviews the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict. *Rosales v. Benjamin Equestrian Ctr., LLC*, 597 S.W.3d 669, 672 (Mo. App. W.D. 2019).

"Review is conducted in the light most favorable to the record and, if the instruction is supported by any theory, its submission is proper." *Id.* The party challenging the instruction must show the offending instruction misdirected, misled, or confused the jury and resulted in prejudice. *Id.*[2]

Denney's argument on appeal focuses on Instruction 9,[3] which instructed the jury as follows:

> In your verdict you must assess a percentage of fault to the plaintiff whether or not defendant was partly at fault, if you believe:
>
> First, plaintiff failed to take *reasonable precautions* due to his allergy, and
>
> Second, plaintiff was thereby negligent, and
>
> Third such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

(Emphasis added). Each of Denney's claims of instructional error relate to the term "reasonable precautions" as used in Instruction 9.

*Point I*: *Denney did not preserve his roving commission argument*

In his first point, Denney claims the instructions failed to specify what conduct constitutes "reasonable precautions." He argues this failure gave the jury a roving commission. However, Denney did not specifically and distinctly raise this objection during the instructions conference and, therefore, waived appellate review of his first point on appeal.

---

[2] Syberg's cites the concurring opinion in *Stevens v. Kliethermes*, 811 S.W.2d 447, 452, (Mo. App. W.D. 1991) for the proposition the alleged instructional errors are reviewed for abuse of discretion. The concurring opinion is not law. *Lampley v. Missouri Comm'n on Hum. Rts.*, 570 S.W.3d 16, 21 (Mo. banc 2019). Moreover, Rule 70.02(a) provides jury instructions "*shall* be given or refused by the court according to the law and the evidence in the case." (Emphasis added). When a party is entitled to a properly tendered instruction based on the law and facts of the case pursuant to Rule 70.02(a), the circuit court has no discretion to refuse it. *Marion v. Marcus*, 199 S.W.3d 887, 892 (Mo. App. W.D. 2006). Because the issue is whether a party is entitled to an instruction, the abuse of discretion standard is inapplicable and this Court will review Syberg's claims of instructional error "de novo, evaluating whether the instructions were supported by the evidence and the law." *Id.* at 893; *see also Barth v. St. Jude Med., Inc.*, 559 S.W.3d 923, 925 (Mo. App. E.D. 2018) (applying *de novo* review to the circuit court's refusal of a comparative fault instruction).

[3] Denney also objected to Instruction 8, Instruction 10, and the verdict form, each of which referenced comparative fault.

Rule 70.03 establishes the requirements for preserving claims of instructional error. *Williams v. Mercy Clinic Springfield Cmtys.*, 568 S.W.3d 396, 414 (Mo. banc 2019). Rule 70.03 provides:

> Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

A specific objection is necessary because an appellate court "will not convict a trial court of error on an issue that it had no chance to decide." *Goralnik v. United Fire & Cas. Co.*, 240 S.W.3d 203, 210 (Mo. App. E.D. 2007). It follows that a point on appeal may not enlarge or alter the objection made at trial. *Id.* Thus, when "an alleged error relating to an instruction differs from or is not included in the specific objections made to and determined by the trial court, it may not be reviewed by the appellate court." *Lowe v. Mercy Clinic E. Cmtys.*, 592 S.W.3d 10, 24 (Mo. App. E.D. 2019).

During the instructions conference, Syberg's proposed a comparative fault instruction requiring the jury to determine whether Denney "failed to take precautions due to his allergy[.]" Denney objected as follows:

> [Denney's Counsel]: … We would object generally to the submission of comparative fault based on the lack of a legal duty and the lack of causation proven by the evidence adduced at trial. More specifically, I think paragraph first, it should state "Plaintiff" -- If the Court overrules our objections generally, we think it should state "Plaintiff failed to take reasonable precautions due to his allergy."
>
> …
>
> [Syberg's Counsel]: I'm fine with that, "reasonable precautions." That's okay with me.
>
>  …

4

THE COURT: Okay. So the objection as to the submission of comparative fault is overruled. Please provide, then, a copy for Instruction 9 that inserts the word "reasonable" precaution -- Excuse me "reasonable" before the word "caution" in paragraph first. Okay.

Later in the instructions conference, Denney objected to Syberg's proposed comparative fault verdict form by stating "[j]ust renew our general objection to comparative fault." The circuit court noted Denney's "general objection" and reiterated it had "been overruled as to [the] submission of comparative fault."

The record shows Denney objected generally to the submission of comparative fault by asserting there was insufficient evidence of a legal duty or causation to support an instruction. By contrast, his first point on appeal specifically claims the instruction was erroneous because it required the jury to decide an "abstract question of law" by failing to specify the "reasonable precautions" he should have taken. Denney argues the instruction therefore granted the jury an improper "roving commission." But he did not specifically object on that basis during the instructions conference. To the contrary, Denney objected "generally" to the submission of comparative fault and *specifically proposed* the phrase "reasonable precautions" which he now claims is erroneous.

Denney's specific proposal is the antithesis of a specific objection, and belies any argument he lodged a distinct and specific objection as required by Rule 70.03. Because Denney's first point "differs from the objections made to the trial court," his claim of error in Point I will not be reviewed on appeal. *Goralnik*, 240 S.W.3d at 210; *see also Hertz Corp. v. RAKS Hosp., Inc.*, 196 S.W.3d 536, 546 (Mo. App. E.D. 2006) (holding a party failed to preserve its "roving commission" argument by not objecting on that basis during the instructions conference).[4]

---

[4] The fact Denney proposed the disputed language also raises the possibility of invited error. *See State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017) (holding a party who jointly drafts and proffers the challenged instruction waives

This Court retains discretion to review unpreserved arguments for plain error. Rule 84.13(c). However, "plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 635 S.W.3d 109, 127–28 (Mo. App. E.D. 2021). This Court declines to engage in plain error review of Denney's first point. Point I is denied.

*Point II: Evidence of Fault*

Denney claims the circuit court erred by instructing the jury on comparative fault because Syberg's did not show he had a legal duty, thus negating any basis for finding he was at fault. More specifically, he argues Syberg's failed to produce substantial evidence he was under a duty to take reasonable precautions while dining at the buffet. Denney's argument is premised in part on his assertion the jury was given no guidance as to what "reasonable precautions" he was expected to undertake. As established, he waived any objection to that term. Consequently, this Court will not consider Denney's assertions challenging the propriety of the term "reasonable precautions" as used in the jury instructions.

A comparative fault instruction must be supported by substantial evidence. *Thompson*, 207 S.W.3d at 120. Evidence is substantial if, when viewed in the light most favorable to submission of the instruction, it permits the jury to "reasonably find" the issue submitted by the instruction. *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010). When there is substantial evidence of comparative fault, "parties to a negligence action are entitled to have their case submitted to the jury under comparative fault principles, absent an agreement to the contrary." *Thompson*, 207

---

appellate review of instructional error). While Denney generally objected to the submission of comparative fault and did not jointly draft and proffer the challenged instruction, the record nonetheless shows he proposed the phrase "reasonable precautions" and never specifically objected to the content of the term or proposed additional language further specifying it.

S.W.3d at 123 (internal quotation omitted); *see also Cox v. J.C. Penney Co.*, 741 S.W.2d 28, 30 (Mo. banc 1987) (holding the assessment and allocation of comparative fault is a jury question).

Denney's argument he was under no duty to take reasonable precautions to mitigate his risk of a potentially severe allergic reaction lacks merit. Missouri law has long recognized "[e]very person has the duty to exercise ordinary care to so conduct himself as not to injure others, and is liable to one who is harmed by a breach of that duty." *Tharp v. Monsees*, 327 S.W.2d 889, 893 (Mo. banc 1959) (internal quotation omitted). The exercise of ordinary care "requires precautions commensurate with the dangers to be reasonably anticipated under the circumstances." *Id.* In other words, the law imposes on every person a duty to act "as a reasonable person would act under the same or similar circumstances." *Jones v. Kennedy*, 108 S.W.3d 203, 207 (Mo. App. S.D. 2003).

The duty to exercise ordinary care is equally applicable to the allocation of responsibility according to comparative fault. In pertinent part, Missouri's comparative fault law defines "fault" as including "acts or omissions that are in any measure negligent or reckless toward the person … of the actor or others[.]" *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 123 (Mo. App. W.D. 2006). The concept of "fault" includes both the "conduct of the plaintiff … as well as a defendant." *Gustafson v. Benda*, 661 S.W.2d 11, 19 (Mo. banc 1983) (quoting Uniform Comparative Fault Act, sec. 1, Commissioners' Comment). Therefore, under comparative fault, the duty to exercise ordinary care under the circumstances applies equally to plaintiffs and defendants and is simply a legal recognition of individual responsibility for voluntary behavior.

Here, the record shows there was substantial evidence from which a jury reasonably could conclude Denney was partially at fault. Denney testified he was aware he had a seafood allergy, but dined at the buffet without informing restaurant staff of that allergy. He further testified the

7

menu was posted visibly and listed fish and shrimp, but admitted he did not read it. He also acknowledged the buffet included a "giant" shrimp station with an ice sculpture covered in peel-and-eat shrimp. While Denney testified a Syberg's employee told him the dish at issue contained hash browns, the employee was never identified. He also testified he knew crab meat looks like hash browns when removed from the shell. Moreover, Denney's own expert witness, a culinary arts instructor for the Missouri Department of Corrections, answered "yes" when asked if it would be "unreasonable" for him not to read the menu.

In addition to Denney's testimony, and his expert witnesses' concession he acted unreasonably, a Syberg's manager testified restaurant staff will assist customers with an allergy by helping them select menu items they can eat. He also testified Syberg's utilized a point-of-sale system allowing servers and bartenders to alert other staff members when a customer has a food allergy. Although this system was available at the buffet, the evidence revealed that Denney did not utilize it.

There was substantial evidence for the jury to conclude – as did Denney's own expert – that he acted unreasonably by eating at the buffet without taking reasonable precautions to mitigate the foreseeable risk that the food he was about to eat was potentially fatal. Denney's knowledge of his seafood allergy, the presence of seafood on the buffet, his failure to read the menu, his failure to specifically request seafood-free food, or avail himself of Syberg's point-of-sale system constitutes substantial evidence from which a reasonable jury could conclude Denney was partially at fault. Point II is denied.

*Point III: Cause*

Denney claims the circuit court erred by instructing the jury on comparative fault because Syberg's did not show any of his acts or omissions caused his injuries. This argument fails because

there was substantial evidence for the jury to conclude Denney's comparative fault was a cause of the injuries he sustained.

To show comparative fault, there must be evidence of an "adequate causal relation" between the fault and the injury at issue. *Gustafson*, 661 S.W.2d at 20 (quoting UCFA, Commissioners' Comment, section (b)). As established above, the record supports a jury concluding that Denney was partially at fault given his knowledge of his seafood allergy, the presence of seafood on the buffet, his failure to read the menu, his failure to specifically request seafood-free food prior to dining or avail himself of Syberg's point-of-sale system. Viewed in the light most favorable to the instruction, this is substantial evidence of a direct causal relationship between Denney's acts and omissions and the injuries he sustained.

There was substantial evidence from which a reasonable jury could conclude Denney's fault was a cause of his injuries. Syberg's, therefore, was "entitled to have [the] case submitted to the jury under comparative fault principles[.]" *Thompson*, 207 S.W.3d at 123. Point III is denied.

**Evidentiary Claims**

In his fourth, fifth, and sixth points, Denney claims the circuit court erroneously excluded evidence of his symptoms after he was treated by paramedics and left the restaurant. The circuit court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015). The circuit court's "broad leeway in choosing to admit evidence and its exercise of discretion will not be disturbed unless it is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Ordinola v. Univ. Physician Assocs.*, 625 S.W.3d 445, 452 (Mo. banc 2021). "For evidentiary error to cause reversal, prejudice must be demonstrated." *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010) (internal quotation omitted). This Court "will

9

uphold the trial court's ruling when there exists any recognizable ground on which the trial judge could have rejected the evidence." *Menschik v. Heartland Reg'l Med. Ctr.*, 531 S.W.3d 551, 557 (Mo. App. W.D. 2017) (internal quotation omitted).

Denney made an offer of proof seeking to admit evidence of his post-treatment symptoms. Denney testified he "felt better" after paramedics treated him and that he then left the restaurant and drove to a friend's home. During the drive, he continued to experience symptoms. After arriving at the house, he lost consciousness and fell. A few hours later, Denney's friend returned home and took him to the hospital. Denney moved to admit into evidence the hospital records which included medical observations and opinions. The records included an "assessment and plan" in which a treating physician noted Denney was "doing fine" and that his loss of consciousness was "likely related to the anaphylactic reaction." The records also indicated Denney had other health issues related to morbid obesity, including unmedicated diabetes.

On cross-examination, Denney testified he believes while receiving treatment at the restaurant, the paramedics injected him with epinephrine, not Benadryl. He testified the epinephrine injection contributed to his symptoms. Denney further testified he settled a negligence lawsuit he filed against the paramedics.

Denney argued the evidence of the symptoms he experienced after leaving the restaurant were admissible under the subsequent tortfeasor doctrine and the sudden onset doctrine. He further argued the hospital records were admissible as business records pursuant to section 490.680, RSMo 2000. In response, Syberg's argued Denney needed expert testimony to show his later symptoms were caused by eating at the buffet. The court agreed, and excluded the evidence presented in Denney's offer of proof.

10

*Point IV: Original Tortfeasor Doctrine*

Denney claims the circuit court erred by excluding evidence of symptoms he experienced after being treated by paramedics and leaving the restaurant because Syberg's is the original tortfeasor and, therefore, is responsible for all consequences flowing from the original injury. Specifically, he argues that under the "subsequent tortfeasor doctrine," Syberg's is liable for all of his damages, including "the alleged subsequent malpractice" by the paramedics because Syberg's actions were the "proximate cause of the subsequent aggravation and injury."[5]

Missouri law provides the initial tortfeasor is generally liable to the plaintiff "for both the harm he originally inflicted as well as any aggravation of the injury that is caused by the reasonably foreseeable negligence of another" including subsequent medical negligence in treating the original injury. *Mackey*, 438 S.W.3d at 475. Liability under the original tortfeasor doctrine is based on the conclusion an "initial tortfeasor is deemed to be the proximate cause" of the plaintiff's damages, including those caused by subsequent medical negligence. *State ex rel. Baldwin v. Gaertner*, 613 S.W.2d 638, 640 (Mo. banc 1981). Therefore, Denney's argument that evidence of his post-treatment symptoms are admissible under the original tortfeasor doctrine is premised on the assumption the paramedics were subsequent tortfeasors who rendered negligent medical care.

Denney's argument falls short because he failed to demonstrate the paramedics were negligent. Generally, proving medical negligence requires "expert testimony that there is a reasonable degree of medical or scientific certainty that but for the tortfeasor's conduct, the injured party would not have been damaged." *Rhoden v. Missouri Delta Med. Ctr.*, 621 S.W.3d 469, 482

---

[5] No Missouri cases refer to a "subsequent tortfeasor doctrine." In *Mackey v. Smith*, 438 S.W.3d 465, 475 (Mo. App. W.D. 2014), the court referred to the "original tortfeasor doctrine," while other cases note the "initial tortfeasor" may be liable because subsequent medical negligence is not an intervening cause insulating the initial tortfeasor from liability. *State ex rel. Tarrasch v. Crow*, 622 S.W.2d 928, 932 (Mo. banc 1981).

11

(Mo. banc 2021). Missouri law also generally requires "expert testimony regarding the appropriate standard of care." *Wickham v. Hummel*, 659 S.W.3d 345, 356 (Mo. App. W.D. 2022).

Denney testified the paramedics negligently administered epinephrine, but he introduced no expert testimony to support his claim they did so or that they negligently aggravated any of his symptoms or violated the applicable standard of care. Further, the treating paramedic testified he administered Benadryl, not epinephrine. Likewise, the paramedic records contemporaneously documenting Denney's treatment do not list epinephrine as one of the administered medications. Because Denney failed to present expert evidence from which the jury could conclude the paramedics were negligent, he necessarily fails to show that evidence of his post-treatment symptoms is admissible under the original tortfeasor doctrine. On this record, Denney's argument amounts to an assertion that evidence of his post-treatment symptoms is admissible solely through his lay testimony reiterating his belief the paramedics negligently caused additional damages. Absent expert testimony the paramedics were negligent, Denney's reliance on the original tortfeasor doctrine is simply an impermissible end-run around the necessity of expert testimony regarding causation. Point IV is denied.

*Point V: Sudden Onset Doctrine*

Denney claims the circuit court erred by excluding evidence of his post-treatment symptoms because it was admissible pursuant to the "sudden onset doctrine." He argues the court should have applied the sudden onset doctrine and allowed the jury to infer causation from the fact he suffered obvious symptoms of an allergic reaction shortly after dining at the buffet.

The sudden onset doctrine "provides a limited exception to the necessity of medical expert testimony to establish causation when the facts fall within the realm of lay understanding." *Brown for Estate of Kruse v. Seven Trails Investors, LLC*, 456 S.W.3d 864, 870 (Mo. App. E.D. 2014).

12

*Id.* at 870 (internal quotation omitted). The sudden onset doctrine permits causation to be established with lay testimony when "the obvious symptoms of the injury follow the trauma immediately, or with only short delay, and the injury is the type that is normally sustained in the kind of trauma involved." *Id*. The doctrine does not apply in cases requiring a medical diagnosis, "where the cause of sophisticated injuries is not within a layperson's common understanding and, therefore, the plaintiff must establish the causal relationship through expert medical testimony." *Id*. Further, Missouri courts have declined to hold "that similarity of pain before and after alleged negligent medical treatment is necessarily sufficient to support a finding of causation." *Kappel v. Slickman*, 401 S.W.2d 451, 455 (Mo. 1966). Thus, the sudden onset doctrine is typically applied in cases involving broken bones or open wounds suffered immediately after an accident. *Brown*, 456 S.W.3d at 870; *see also Holmes v. Gamewell*, 712 S.W.2d 34, 37 (Mo. App. E.D. 1986) (noting application of the sudden onset doctrine to sudden back pain).

Unlike a broken bone or open wound sustained in an accident, Denney's post-treatment symptoms after leaving the restaurant were not so obviously caused by his allergic reaction that "the facts fall within the realm of lay understanding." *Brown*, 456 S.W.3d at 870. Instead, determining the cause of his post-treatment symptoms allegedly arising from his initial allergic reaction requires an understanding of a confluence of factors resulting in complex physiological responses. *Cf. Delisi v. St. Luke's Episcopal-Presbyterian Hosp., Inc.*, 701 S.W.2d 170, 175–77 (Mo. App. E.D. 1985) (holding expert medical testimony was required to submit a claim of medical negligence based on allegations a physician's failure to prescribe antibiotics caused the plaintiff's wound infection). Moreover, Denney cites no case applying the sudden onset doctrine to symptoms of a delayed or recurrent allergic reaction or any analogous circumstance. To allow evidence of Denney's post-treatment symptoms on this record would invite the jury to make

13

findings based on "the forbidden realm of conjecture and surmise" *Delisi*, 701 S.W.2d at 177, without the benefit of the expert testimony necessary to establish causation when "sophisticated injuries" are at issue. *Brown*, 456 S.W.3d at 870. Point V is denied.

*Point VI: Business Records Exception*

Denney claims the circuit court erred by excluding evidence of his post-treatment symptoms because he provided medical records containing medical opinions linking his symptoms to the consumption of seafood at Syberg's. He argues the records were admissible as business records pursuant to section 490.680 and that he laid he proper foundation for their admission.

Since the enactment of the section 490.680, Missouri courts have consistently recognized the statute applies to hospital records as a hearsay exception. *Melton v. St. Louis Pub. Serv. Co.*, 363 Mo. 474, 485, 251 S.W.2d 663, 669 (Mo. banc 1952). But the statute does not "make all business and professional records competent evidence regardless of by whom, in what manner, or for what purpose they were compiled or offered[.]" *State ex rel. State Highway Comm'n v. Koberna*, 396 S.W.2d 654, 666 (Mo. 1965). Consequently, even when medical records are excepted from the hearsay rule pursuant to section 490.680, the circuit court is authorized to exclude the records based on a timely and meritorious objection on other grounds, such as "inadequate sources of information" or lack of foundation. *Allen v. St. Louis Pub. Serv. Co.*, 285 S.W.2d 663, 667 (Mo. 1956).

Denney moved to admit medical records including the treating physician's statement Denney complained of an allergic reaction to shellfish and that his loss of consciousness was "likely related to the anaphylactic reaction." He submitted an affidavit from the records custodian as required by section 490.680. Syberg's timely objected to the admission of the medical records, asserting Denney failed to lay an adequate foundation because "he needs an expert to come in and

explain the causation, and he doesn't have one." Denney's reliance on the hearsay exception provided by section 490.680 fails to address the critical foundational deficiency in his offer of proof; namely, the lack of any expert testimony showing any causal relationship between dining at the buffet, treatment by the paramedics, and his alleged post-treatment symptoms. Rather than establishing causation through expert testimony, Denney is essentially attempting to utilize the business records exception to the hearsay rule as a substitute for the necessity establishing the prerequisites for the admission of expert testimony pursuant to section 490.065. Critically, Denney presented no evidence in the offer of proof indicating the treating physician's notation was based on a reasonable degree of medical certainty, as is necessary for the admissibility of expert testimony regarding causation. *Edgerton v. Morrison*, 280 S.W.3d 62, 69 (Mo. banc 2009). Moreover, the medical records Denney sought to introduce indicated he had other health issues related to morbid obesity, including unmedicated diabetes. On this record, the circuit court's exclusion of the medical records was not an abuse of discretion. Point VI is denied.

*Point VII: Closing Argument*

Denney claims the circuit court erred by overruling his objection to Syberg's assertion in closing argument that there was no evidence of medical bills. Denney contends this argument violated a pre-trial ruling purportedly sustaining his motion *in limine* to bar the parties from mentioning the amount of Denney's medical bills or the "failure to offer any such medical bill in evidence[.]"

Denney's argument distills to an assertion this Court should reverse the circuit court's judgment, entered following a two-day jury trial, based on the following isolated comment in Syberg's closing argument:

> [Syberg's]: And what have you even heard about damages? There's no medical
> bills being asked of in this case.

15

[Denney]: Objection, Your Honor. That violates the Court's standing order.

[Syberg's]; Judge, I think we can say he's not asking for those damages because it's not part of the case.

[The Court]: Overruled.

"Generally, the trial court's rulings on closing arguments are reviewed for abuse of discretion." *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 766 (Mo. banc 2010). Further, Rule 84.13(b) precludes this Court from reversing "any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." "The burden is on the appellant to prove the trial court abused its discretion and prejudice resulted." *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 699 (Mo. App. E.D. 2020)

Denney summarily asserts the finding of comparative fault demonstrates prejudice because it shows the jury considered information outside the evidence to assess damages. Syberg's isolated reference in closing argument to the absence of medical bills pertains to proof of damages, not the allocation of those damages according to Denney's comparative fault. Denney's argument regarding prejudice is speculative. Therefore, even if the circuit court erroneously overruled Denney's objection, he has not demonstrated Syberg's isolated reference to the fact there was no evidence of medical bills materially affected the judgment. *Cf. Wigley v. Cap. Bank of Sw. Missouri,* 887 S.W.2d 715, 723 (Mo. App. S.D. 1994) (applying Rule 84.13(b) and holding the appellant failed to demonstrate prejudice from opposing counsel's closing argument). Furthermore, and contrary to Denney's argument, the court's order sustaining Syberg's motion *in limine* did not prohibit reference to his failure to introduce medical bills in this case, but rather precluded mention that Denney was pursuing damages in another lawsuit for the cost of his medical treatment. The order provided "the parties shall be prohibited from introducing into

16

evidence, mentioning or referencing evidence that Plaintiff is pursuing damages for the costs of medical treatment allegedly incurred as a result of the incident in this case." Point VII is denied.

*Point VIII: Voir Dire*

Denney claims the circuit court erroneously denied his motions to strike several allegedly biased venirepersons. Denney argues he moved to strike venirepersons 2, 6, 7, 14, 21, and 22 for cause after they expressed bias against him.[6] The record shows Denney only moved to strike venirepersons 14 and 21, thus waiving his claims with respect to the remaining venirepersons.

The circuit court's ruling on a challenge for cause will be affirmed on appeal "unless it is clearly against the evidence and is a clear abuse of discretion." *Joy v. Morrison*, 254 S.W.3d 885, 888 (Mo. banc 2008) (internal quotation omitted). "A ruling constitutes an abuse of discretion when it is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Cox*, 473 S.W.3d at 114 (internal quotation omitted).

The purpose of voir dire "is to determine which persons harbor bias or prejudice against either party which would make them unfit to serve as jurors." *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 436 (Mo. banc 2016). The analysis focuses on whether the venireperson expressed beliefs which would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Joy*, 254 S.W.3d at 888 (internal quotation omitted). A venireperson's qualifications are determined by the entire examination, not their answer to a single question. *Id.*

Denney moved to strike venireperson 14 because the venireperson stated he loved Syberg's and he had been going to the restaurant since he was a child. The record of the entire examination,

---

[6] In his reply brief, Denney limits his argument to venirepersons 14 and 21.

17

however, shows that over the course of Denney's questioning, Venireperson 14 consistently stated his decision would be guided by the facts of the case:

[Denney]: And, Mr. Kelly how does that make you feel that we're suing Syberg's today? They're a defendant in this case.

[Venireperson 14]: I mean, honestly, it depends on the facts of the case again, seriously.

[Denney]: Sure.

[Venireperson 14]: But, you know, I mean, come on. It's like suing the Cardinals or something, you know. I mean, you don't like to see the good guy get hurt, but depending on the case, no company, no person is perfect. So maybe there was something that was negligent that needs to be brought out in the case. So that's how I feel.

…

[Denney]: … So if we were talking about a scale and everything else was equal, would you tip that scale just a little bit in favor of Syberg's because you have those good experiences and those positive feelings?

[Venireperson 14]: Feelings, yeah. They're not cerebral. They're not intellectual thought analysis.

[Denney]: So those feelings wouldn't bear on your decision?

[Venireperson 14]: I wouldn't make my decision based on the fact that I think Syberg's is a cool place to have a drink, you know.

The record indicates venireperson 14 explained he would impartially determine the facts irrespective of his positive feelings toward Syberg's. He also stated his belief that companies and individuals should be accountable for negligent acts. The circuit court's decision to overrule Denney's motion to strike venireperson 14 was not so clearly against the logic of the circumstances that it constitutes an abuse of discretion.

Denney moved to strike venireperson 21 for bias because she asked "[h]ow drunk was he when he ate the shellfish?" As with venireperson 14, an examination of the entire record shows

18

the circuit court did not abuse its discretion by denying Denney's request to strike venireperson 21. In response to the objection, Syberg's asserted her comment appeared to be meant as a joke and indicated no bias because "[s]he laughed when she said it" and "[e]veryone else laughed" as well. Further, after the venireperson indicated she planned to meet friends at a Syberg's restaurant following court proceedings that day, the following exchange occurred:

[Syberg's]  And you did go to Syberg's?

[Venireperson 21]: Yes.

[Syberg's]: Did you learn anything or figure out anything you think has any bearing on this case and your ability to fairly listen to the evidence?

[Venireperson 21]:  No.

[Syberg's]: Do you believe that you can fairly listen to the evidence and the instructions in this case and make a fair and impartial juror?

[Venireperson 21]: Right.

We recognize the circuit court is "in a position superior to an appellate court to determine the qualifications of a potential juror, for its determination involves an assessment of demeanor as well as testimony." *State ex rel. Missouri Highway & Transp. Comm'n v. Vitt*, 785 S.W.2d 708, 711 (Mo. App. E.D. 1990). Unlike this Court, the circuit court had the opportunity to witness the venireperson's demeanor or the tenor of the proceedings. Further, the venireperson acknowledged that while she went to Syberg's, she learned nothing that would influence her consideration of Denney's case. The venireperson's statements provided a reasonable basis for the circuit court to conclude her comments did not express beliefs that would "prevent or substantially impair the performance of [her] duties" in accordance with the court's instructions. *Joy*, 254 S.W.3d at 888. Point VIII is denied.

19

## Conclusion

For the foregoing reasons, we affirm the circuit court's judgment.

_____
Renée Hardin-Tammons, Judge

Sherri B. Sullivan, P.J. and
Laura D. Stith, Sp.J., concur.